## MARRIN v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. February 27, 1909.)

No. 20, October Term, 1908.

1. CRIMINAL LAW (§ 751*)—TRIAL—MISCONDUCT AFFECTING JURORS—READING NEWSPAPERS.

While the fact that jurors, engaged in the trial of a criminal case, have read newspaper articles relating to the case which were highly improper and calculated to prejudice the defendant will justify the court in its discretion in permitting the withdrawal of a juror and a continuance of the case, it is not an abuse of discretion to refuse to do so where such jurors, on being interrogated, declare that the articles read would not influence them in arriving at a verdict.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 751.*]

2. CRIMINAL LAW (§ 1137*)—APPEAL AND ERROR—REVIEW—WAIVER OF ERROR.

Where counsel for a defendant on trial for a criminal offense moved for the withdrawal of a juror and continuance of the case on the ground that the jurors had read newspaper articles during the trial calculated to prejudice the defendant, but after the examination of the jurors and consulta-

tion with his client, announced that he would not press the motion but that defendant put himself in the hands of the court, he was bound to accept the court's decision and cannot assign the overruling of his motion for error.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1137.*]

**3. CONSPIRACY (§ 43*) — CONSPIRACY TO DEFRAUD BY THE USE OF THE MAILS— AVERMENT OF FRAUDULENT PURPOSE—VARIANCE.**

While in an indictment, under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676) for a conspiracy to make use of the mails pursuant to a scheme to defraud, a fraudulent purpose must be averred and proved, and where a purpose to defraud two jointly is charged, it must be proved as laid, yet where the sending of individual letters to parties named is charged in the indictment in different counts, an averment in general terms of an intent to defraud these parties does not necessarily import that the conspiracy contemplated a joint defrauding of the whole number named; the parties not being in business together or jointly interested in the property which it was the aim of the conspiracy to secure.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 43.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

For opinion of court below on rule for a new trial, see 159 Fed. 767.

V. Gilpin Robinson, for plaintiff in error.

J. Whitaker Thompson, U. S. Atty.

Before DALLAS and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The defendant was convicted of a conspiracy to defraud by the use of the mails. He was engaged, with others, in conducting what was known as the "Storey Cotton Exchange," with which a large number of persons in different parts of the country were induced by correspondence to intrust their money for the purpose of speculating in cotton, upon highly inflated expectations, skillfully aroused, of altogether impossible profits; the United States mails being used to advertise and carry on the business. The fraudulent character of the enterprise and the defendant's connection with it were abundantly shown, and the only question is whether he was duly convicted. The case was one of considerable public interest, in view of the extended character of the swindle, and the number of persons affected, and prominent reports of it appeared in the Daily Press of Philadelphia, where it was tried. In the main these were unobjectionable, although some of the papers were not so circumspect as they might be. But in one, which arrogated to itself the credit of having unearthed the fraud and brought the defendant and his associates to justice, highly sensational accounts were indulged in, commenting on and distorting the evidence, as well as referring to matters of which no evidence was given, in a way that was calculated to prejudice the defendant, and to impede the administration of justice by standing in the way of a fair and impartial trial, and they might well have been made the ground of proceedings for contempt. The defendant took no notice of these articles for a time, but, growing

worse as the trial progressed, it was finally concluded by his counsel that they ought not to be passed over, and they were accordingly brought to the attention of the court by a motion to withdraw a juror and continue the case. The trial was thereupon stopped and the jurors interrogated, by which it appeared that six of them had seen and read some, if not all, of the articles complained of. But the rest had not; and all who had with one accord declared that they were not and would not be influenced by them, taking the evidence as given by the witnesses, and not from the newspapers. Upon this showing the defendant's counsel, after consulting with his client, announced that, although indignant at the occurrence, he would not press his motion, but would put himself in the hands of the court, as he expressed it. The motion was thereupon overruled, and the trial proceeded with; and, having resulted in a conviction, the case is now brought here on error.

As already stated, the newspaper articles complained of were outrageous in character, and the indignation of counsel with regard to them was fully justified. But the action of the court must nevertheless be sustained in overruling the motion. While it was within the discretion of the trial judge to withdraw a juror and continue the case, he was certainly not required to do so in the face of the declaration by the jurors who had read the articles that they would have no influence with them in arriving at a verdict. Even where a juror on his voir dire, in a homicide case, where the rules are held the strictest, admits to having formed an opinion as to the guilt or innocence of the accused from reading newspaper accounts of the transaction, and that opinion is so fixed that it would take evidence to remove it, yet, if the juror, at the same time, is able to say, and the court is so convinced, that if sworn as a juror he can discard this opinion and decide the case solely on the evidence as it is given by the witnesses, he is qualified to act, and a challenge for cause will not be sustained. 17 Am. & Eng. Cyc. Law, 2d Ed. 1147; Commonwealth v. Spahr, 211 Pa. 542, 60 Atl. 1084. This being the rule in selecting a jury before trial, much more is it to prevail afterwards, when the evidence is all in, and the case is about to go to the jury, and the complaint is that they have been exposed to improper newspaper influence, the effect of which upon them they explicitly deny. It is true that it may be a question how far a person is able to measure or dispel the bias to which he has been subjected, particularly in the case of articles so virulent and persistent as here. But, there being no other test, the matter has largely to be submitted to his own judgment; and, where attention has been called to it by an investigation such as was conducted here, even the ordinary juror, and much more the conscientious one, would be careful to try and exclude any suspicion of influence, with a reasonable chance of success. It was therefore a matter for the court in its discretion on the showing made to grant or refuse the motion to withdraw a juror. It was not bound to do so, so as to make a refusal of it an abuse of discretion of which we can lay hold.

It is said, however, that the court did not exercise the discretion vested in it, as is shown by the opinion denying a new trial, where it

is admitted that the articles were calculated to prejudice the defendant, and that he would have been entitled to have a juror withdrawn if he had insisted on it; the mistake being made by the court in supposing that he did not. But it is clear from the record that the defendant did not press his motion, if, indeed, he did not in effect withdraw it. The court so understood it, as appears from the opinion referred to, which, if capable of being resorted to for one purpose, is admissible generally. Nor is this at variance with the record proper. As is there shown, after the examination of the jurors had disclosed that, according to their statement, the newspaper articles had had no effect upon them, it was said by Mr. Robinson, addressing the court:

"I am put in an exceedingly delicate position, and so is the defendant. He says that in the face of the assurance that is given by the jury he does not feel as if he ought to press for the withdrawal of a juror. Of course, he could not say anything else. But it puts me, and it puts him, and it puts the jury, in an exceedingly delicate position. And we are in the hands of the court."

There was more that followed, but this is the substance, and we do not need to quote further. The gist of it all is that the motion to withdraw a juror and stop the case was not pressed. And this, as it now appears by the statement of counsel made at the argument, was not done on his own responsibility, but advisedly, after going over the matter and weighing the consequences with his client. It was conceived, as he frankly says, that there was a chance for an acquittal, and they concluded to take it, rather than have the trial go for naught, only to have in the end to face another jury. Having thus taken the chance of success, why should not the defendant in justice be held to it? Or why, because he is disappointed in the result, should he be allowed to retract in the hope of a different outcome on another trial? As already stated, as the result of polling the jury, it was announced by counsel, after consulting with his client, that the motion under consideration was not pressed, and that the defendant put himself in the court's hands. What could this mean, except that he was willing to abide by whatever the court decided; if to continue, he was content, or, if to go on, he was equally so? He could not declare, as he plainly did, that he did not press for a continuance, and now insist on it. He was called upon either to require the court to protect him against what had happened or to accept without demur its action in the premises, and the adoption of the one was an abandonment of the other. Spreckles v. Brown, 212 U. S. 208, 29 Sup. Ct. 256, 53 L. Ed. ——. Had a juror been withdrawn after the announcement of counsel, the defendant with not a little show of reason might have contended, upon a subsequent arraignment, that it was not at his instance that a juror had been withdrawn, but that the court had acted upon its own responsibility, and that he could not in consequence be put again in jeopardy. And he cannot expect us to sanction that which would lead to any such possibility. But, aside from that, having put himself on record, as not pressing for a continuance, he cannot assign for error that a continuance was not had.

It is said, however, that even after the remarks of counsel, which have been alluded to, further testimony was taken, and an exception

noted by the court at the close upon overruling the motion. This is true, and it introduces the only uncertainty. It is not clear just how or why it so happened. But an exception was no; asked by the defendant, but was apparently noted by the court o^ 'is own motion out of abundant caution, so that, if the defendant's rights were found to have been prejudiced in any respect, they might be protected. It is not to be taken as indicating that the motion was overruled against the defendant's protest, which, in the face of his previous submission, it clearly was not. And not, under the circumstances, having been prejudiced in any way by the action of the court, as we look at it, it saved nothing which he can now set up.

The only other matter which it is necessary to notice is the question of variance. As already stated, the offense charged in the two indictments, as to which this is claimed, is conspiracy; the conspiracy specified being the carrying out of a scheme to defraud by the use of the mails. A conspiracy to commit an offense against the United States, if followed by an overt act, is itself a crime. Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676); Grunberg v. U. S., 145 Fed. 81, 84, 76 C. C. A. 51. And, as is well known, the use of the mails to defraud is criminal. Section 5480 (U. S. Comp. St. 1901, p. 3696). Why it was necessary to combine the two in the present instance, a scheme to defraud being a conspiracy in effect, and the overt act, the carrying of it out by means of the mails, being the substantial thing, does not appear. But we must take the charge as it stands, and the only question is whether there was a departure from it in the proof. As charged in the first indictment, the scheme was directed to the defrauding of three persons, naming them, evidence being offered as to only one, and in the second, to the defrauding of four, evidence being offered as to but two. It is contended that the designation of the persons to be defrauded is of the essence of the offense, and must therefore be proved as laid, and that the proof here only going to a part of them the conviction cannot be sustained.

By section 5480, by which the use of the mails in a scheme to defraud is made a crime, it is the depositing in or the taking out of a letter, pursuant to such scheme, that is the offense; or, in other words, it is not the scheme, but the acts done under it, that are the concern of the law. In re Henry, 123 U. S. 373, 8 Sup. Ct. 142, 31 L. Ed. 174; In re De Bara, 179 U. S. 320, 21 Sup. Ct. 110, 45 L. Ed. 207, Francis v. U. S., 152 Fed. 155, 81 C. C. A. 407. And a conspiracy to commit such an offense is a confederating together of two or more persons to carry out a scheme of that kind in that way. The use made of the mails in the sending and receiving of letters is thus the material thing, and not, except as a matter of inducement, or aggravation, the magnitude, of the fraud, whether extending to many or to few. No doubt a fraudulent purpose must be averred and proved. But, the letters sent being the substance of the offense, and the sending of individual letters to parties named having been charged in the indictment in different counts, an averment in general terms of an intent to defraud these parties does not necessarily import that the conspiracy contemplated a joint defrauding of the whole number named. This

might be the case where two or more parties were in business together or jointly interested in property which it was the aim of the conspiracy to secure. And the charge of a purpose to so defraud them, even with the relaxation in criminal pleading, which now obtains, would doubtless have to be proved as laid. Commonwealth v. Harley, 7 Metc. (Mass.) 506; Commonwealth v. Kellogg, 7 Cush. (Mass.) 473. But the letters relied on in the present instance were individual and several, and the parties to whom they were addressed had no connection with each other, business or otherwise, so far as is shown. And the sending of the letters to them being charged in different counts, and constituting the overt acts for which the defendant was held, the individual purpose in each sufficiently appears, which the mere joining of the parties together in the general allegation that the scheme as contemplated by the defendant and his associates embraced them all is not, in our judgment, sufficient to overcome. The defendant in every prosecution is entitled to be informed by the indictment of the offense which he is to meet, and to have it so described and identified, that he will be protected from having to defend against it a second time. But we are not persuaded that the present indictment does not fulfill these requirements, or that the defendant or any one else would be misled, to his hurt, into the idea that a joint, and not an individual, defrauding of the parties named was charged. The government was at liberty, therefore, to stop short with proof as to either of the parties as to whom letters were mailed without any showing as to the rest, and the charge of variance, which is based on this, cannot be sustained.

The judgment is affirmed.