# ·CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS

---

### RICHARDSON v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. August 22, 1910.)

1. BANKS AND BANKING (§ 256*)—NATIONAL BANKS—OFFICERS—FALSE ENTRIES—OFFENSES.

The making of false entries in the books of a national bank is equally an offense, whether it is done by the bank officer charged, or whether he procures it to be done through the medium of others.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–967; Dec. Dig. § 256.*]

2. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES—FALSE ENTRIES—INDICTMENT—NAMES OF PERSONS MAKING ENTRIES.

Where an indictment against a national bank cashier for making false entries, specified with great particularity and at length the entries, the falsification of which was charged, and these entries were fully described, the indictment was not defective for indefiniteness, because it did not specify the names of the clerks or employés by whose hand the entries were in fact made.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965–976; Dec. Dig. § 257.*]

3. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—BANK OFFICERS—OFFENSES—INDICTMENT.

Where a national bank cashier was indicted for making false entries, and also for indirectly participating in the making thereof, in that he caused and procured them to be made, proof of either of such charges was sufficient after verdict to sustain a conviction, even though the other was not proved.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

4. CRIMINAL LAW (§ 59*)—PARTIES TO OFFENSE—PROCUREMENT—EFFECT.

Where an act is done by the procurement of a person, it is his act in effect, even where it is a crime.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71–81; Dec. Dig. § 59.*]

5. CRIMINAL LAW (§ 59*)—PRINCIPAL—PRESENCE.

In order that a principal shall be answerable for a felony he must have been actually or constructively present where another equally guilty committed the offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71–81; Dec. Dig. § 59.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

181 F.—1

6. CRIMINAL LAW (§ 59*)—MISDEMEANORS—PRINCIPALS.
  Where an offense is a misdemeanor all participants are principals.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71–81; Dec. Dig. § 59.*]

7. BANKS AND BANKING (§ 256*)—PRINCIPALS AND AIDERS AND ABETTERS—NATIONAL BANKS—OFFICERS.
  Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), makes it a misdemeanor for any officer, director, cashier, or agent of a national bank to make any false entries in any book, report, or statement of the association with intent to injure or defraud the association, or to deceive any agent appointed to examine the affairs thereof, and then declares that every person who with like intent aids or abets any officer, clerk, or agent in any violation of the section shall be also guilty of a misdemeanor. *Held* that, where a violation of the statute is committed by an officer and an outsider, the one must be prosecuted as a principal, and the other as an aider and abettor, but that the provision as to aiding and abetting does not apply to those who, as national bank officers, with fraudulent intent, make or cause to be made false entries in the books and reports of the bank, as such they are principals, whether they bring about the falsification through the medium of others, innocent or guilty, or do it themselves; the aiding and abetting applying only to those not connected with the bank, who counsel, or incite those who are.
  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 965; Dec. Dig. § 256.*]

8. CRIMINAL LAW (§ 1059*)—EXCEPTIONS—SUFFICIENCY.
  A general exception taken to the refusal to direct a verdict is insufficient to entitle accused to complain of a variance on appeal.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2671; Dec. Dig. § 1059.*]

9. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—BANK OFFICERS—DEFENSES—FALSE ENTRIES—INTENT.
  The intent with which false entries in the books or reports of a national bank are made is of the essence of the offense, and must be proved as laid.
  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965–976; Dec. Dig. § 257.*]

10. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFICERS—INTENT TO DEFRAUD.
  Where false entries were made by the officers of a national bank to overcome complaints by the comptroller in order that the bank examiners and the comptroller might be deceived and misled thereby, proof of such false entries was sufficient to sustain a finding that they were made with intent to injure and defraud the bank, and this though they represented the condition of the bank to be more favorable than it was.
  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965–976; Dec. Dig. § 257.*]

11. CRIMINAL LAW (§ 761*)—INSTRUCTIONS—ASSUMPTION OF DISPUTED FACTS.
  Where, in a prosecution of a national bank officer for false entries, the government denied that the clerks who made the false entries under the directions of the defendant, were in any sense accomplices, requests to charge assuming that they were accomplices were properly refused.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1754–1764, 1771; Dec. Dig. § 761.*]

12. CRIMINAL LAW (§ 510*)—CONVICTION—ACCOMPLICES—TESTIFYING.
  There is nothing which forbids the conviction of a defendant at common law or in the federal courts on the uncorroborated testimony of an accomplice.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1124–1126; Dec. Dig. § 510.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**13.** CRIMINAL LAW (§§ 763, 764*)—ACCOMPLICES—CORROBORATION—INSTRUCTION.
  Since, in a prosecution in a federal court corroboration of an accomplice is not indispensable, an instruction that the credibility of such a witness is weakened by the absence of corroboration, and that the jury ought to acquit where there is no corroboration of an accomplice's testimony, encroaches on the prerogatives of the jury who have the right to rely on such evidence if they are satisfied therewith.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731–1748; Dec. Dig. §§ 763, 764.*]

In Error to the District Court of the United States for the Western District of Pennsylvania.

One Richardson, as cashier of the Cosmopolitan National Bank of Pittsburg, Pa., was convicted of making false entries in the books of the bank, and in the reports of its financial condition, and he brings error. Affirmed.

Ben. C. Tunison and James A. Wakefield, for plaintiff in error.
R. M. Gibson, Asst. U. S. Atty.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The defendant, as cashier of the Cosmopolitan National Bank of Pittsburg, Pa., was convicted of making false entries in the books of the bank and in the reports of its financial condition, made to the Comptroller of the Currency, with intent to injure and defraud the bank and to deceive the directors and the agents appointed by the comptroller to examine it. The entries falsified were set out in the indictment, and the defendant was to that extent advised of the exact charge which was made against him; but it is now contended that in several respects the indictment is not sufficient; that it varies from the evidence; that the defendant should not have been charged as a principal, but as an aider and abettor, the entries having been made by the hands of others; and that a conviction should not have been allowed, as it was, on the evidence of accomplices, without cautioning the jury as to the weight to be given to their testimony.

The indictment is based on Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), which reads as follows:

"Every president, director, cashier, teller, clerk or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendant being charged with having caused the false entries. in question to have been made by others, it is contended that the names of the parties by whom they were made should have been given, and: that without this, even after verdict, the. indictment is not sufficient. In United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819, the defend-- ant was charged with unlawfully causing or procuring a still and boiler· to be used for the purpose of distilling liquor in a building where· vinegar was being manufactured, contrary to the provisions of the stat- ute in such case made and provided; and it was held that the defend-- ant himself not being charged with using the still and boiler, but only with causing or procuring them to be used by others, the names of the persons by whom it was done should have been given, it being neither impracticable nor unreasonably difficult to do so, and it not being stated that the names of such parties were to the grand jury unknown. This was approved in United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135, where it was held that an indictment for making and passing counterfeit securities of the United States, in omitting to state that the defendant at the time of the uttering knew them to be counterfeit, failed to state a crime within the provisions of the law. It is not enough as is there said and as was said in the Simmons Case, to set forth the offense in the words of the statute, "unless these words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the of- fense intended to be punished." So in Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725, where the defendant was. charged with having impersonated and voted in the name of another at an election held for the choice of a representative in Congress, it was. held that, in order to make out an offense under the statute, it was nec- essary to charge that the defendant in fact voted for such representa- tive, and not simply that he voted at an election where a representative was voted for by others, his vote having been possibly confined to· state officers. These decisions are cited and relied on by the defend- ant, as showing the particularity of averment, which is required in, criminal matters even under the modern practice; and especially the Simmons Case, as expressly ruling that when an offense is committed through the instrumentality of others, the names of those by whom it was committed must be given. These decisions· are highly technical,. and seem to carry the law to the verge, but must nevertheless be re- spected if they are found to apply. As possibly qualifying them, how- ever, in the recent case of Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, on an indictment against a United States. Senator for practicing before a federal department, in violation of the statute, it was held that the defendant was not entitled to a disclosure in the indictment of all the particular means so employed. The ques- tion in every such case is whether, taking the indictment as it stands, the defendant is sufficiently advised of the charge which is made, so as to enable him to prepare his defense and to plead the judgment as a bar to a subsequent prosecution. N. Y. Cent. R. R. v. U. S., 212 U. S. 481, 29 Sup. Ct. 304, 53 L. Ed. 613; Standard Oil Co. v. U. S. (C. C. A.) 179 Fed. 614. Properly considered, neither of the cases relied on by the defendant goes further than this or proceeds upon a different

ground. It is not decided, for example, in the Simmons Case, that in every instance where an offense is charged to have been committed through the agency of another, the person by whom it was done must be named. The naming of the person in that case was deemed requisite; that is all. The offense there was most meagerly charged, the bare words of the statute defining it being used. And it may very well have been considered necessary, in consequence, in order to identify the act relied on for a conviction, to require that the name of the person by whom it was claimed to have been done should be given. In the present instance, however, nothing of the kind can be said. With great particularity, and at considerable length, the entries, the falsification of which is charged, are described, their position by book, report, column, and line in each case having been given. The exact part taken by the defendant in the falsification was unimportant, save only as he was shown to be involved or responsible for it, as he undoubtedly was. It was equally an offense, whether he did it himself or procured it to be done through the medium of others, and with the particulars indicated, it was not necessary, where done by another, to charge by just whom it was so done. The entry falsified and the purpose of it were the important things, as to which the fullest information was given. The ordinary course of business, with which the defendant was familiar would disclose the rest. It was not, as in the Simmons Case, where the use of the boiler and still constituted a single unrelated act, in no way connected with the business carried on at the place and with which the defendant had possibly nothing to do. It is to be noted, also, in the present instance, that the defendant is charged in the indictment with making the false entries, as well as causing and procuring them to be made, a direct, as well as an indirect participation, being thus averred, the one of which would be good after verdict and sufficient to sustain a conviction, even if the other was not. Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097. But without resting the case upon that, we are not persuaded that under the circumstances the indictment was not sufficiently specific, so as to meet all the requirements of the law as it stood; and the conviction based on it is not therefore to be disturbed.

There is nothing in the contention that the defendant should have been charged as aiding and abetting, and not as a principal, the entries having been made by others who were guilty participants in the crime. No doubt the entries and items falsified were the work of others, but they were clerks, acting under the direction of the defendant, who was thus legally as well as morally bound. They may or may not have acted with knowledge, so as to be guilty themselves. But the case does not turn upon that point. Where an act is done by the procurement of a person it is his act in effect, even where it is made a crime. It is true that, in case of a felony, in order to be answerable as principal, the person must have been actually or constructively present where another, equally guilty, commits the deed. But the offense here is a misdemeanor, in which all parties are principals, and there is no occasion therefore to refine over the distinction between aiders and abettors, or principals in the first or second degree.

It is contended, however, that, by the terms of the statute, aiding

and abetting is a distinct offense, and covers every case where the falsification is not the direct act of the defendant, but is done by his procurement; and must be so specifically laid. The act; as it is said, not only denounces bank officers who, with fraudulent intent, do the falsification, but every person who, with like intent aids and abets them therein, and, having in terms provided for the punishment of that which without it would have been punishable as the act of an accessory at common law, it was the evident intention to make the aiding and abetting a substantive offense, preserving the distinction which prevails in the case of a felony; this being confirmed by the title of the amendatory act, by which the provision is first brought into the law (Act April 6, 1869, c. 11, 16 Stat. 7) where it is the declared purpose of the amendment to extend to accessories the penalties of the original act. This argument, however, fails to note the limitation of the original, which was confined in terms to officers, clerks, and agents of national banks, the manifest purpose of the amendment being to enlarge its scope, and not to revive refined distinctions with regard to principals and accessories which have been outgrown. The added provision made every person who aided or abetted in the offense liable to the same extent as the officer, clerk, or agent who committed it, and thus brought in new parties who would not otherwise be held. The law recognized that the actual falsification would be done by those who were immediately engaged with the affairs of the bank, and had the charge and custody of its books, and these the original act reached— those by whose hands the false entries were made, as well as those who directed it to be done. But not those who, having no relation to the bank, were not within its terms; and it was to these, when aiding and abetting those who were, that the amendment was intended to apply. An officer, clerk, or agent is thus to be indicted as a principal offender, whatever his participation in the offense, the same since the amendment, as it was before. As was said of a cashier, indicted under the act in Peters v. United States, 94 Fed. 127, 36 C. C. A. 105:

"He is as guilty if he directed false entries to be made by the clerk or bookkeeper as if made the entries in person."

And Morse v. United States, 174 Fed. 539, 98 C. C. A. 321, is to the same effect. The distinction made in the statute is well pointed out in Coffin v. United States, 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109, where it is said:

"The primary object of the statute was to protect the bank from the acts of its own servants. As between officers and agents of the bank and third persons co-operating to defraud the bank, the statute contemplates that a bank officer shall be treated as a principal offender. In every criminal offense, there must of course be a principal, and it follows that, without the concurring act of an officer or agent of a bank, third persons cannot commit a violation of the provisions of section 5209. If, therefore, a violation of the statute in question is committed by an officer and an outsider, the one must be prosecuted as the principal, and the other as the aider and abettor."

This in our judgment is all that there is to this part of the act. It has nothing to do with those, who, as national bank officers with fraudulent intent, make or cause to be made false entries in the books and reports of the bank. As such they are principals, whether they

bring about the falsification through the medium of others, innocent or guilty, or do it themselves. The aiding and abetting applies to those not connected with the bank, who instigate, counsel, or incite those who are.

But it is said that a different construction is put upon the act in Cochran v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704. In that case Cochran as president and Sayre as assistant cashier were indicted under this section for making a false entry in a report to the Comptroller of the Currency, Sayre being charged in the indictment with making the entry, and Cochran with aiding and abetting him therein. The introduction in evidence of the report to the Comptroller was objected to at the trial, because neither of the defendants could be convicted under the indictment as principals, but only as accessories, the report not having been made out by them, but by some one else; with regard to which it was said:

"The second objection that the defendants could not be convicted as principals in making the report, but only as accessories would probably be true, if they were charged with making such reports"—

the conclusion being reached that:

"As it is admitted that Sayre actually made the entries in and filled out the report in question, he was properly charged as principal; and it was for the jury to say whether Cochran, the president, so far aided and abetted him in making such entries as to make him liable as an accessory."

But the expression of opinion, which was so qualifiedly advanced, while addressed to the objections made at the trial, was nothing but a dictum, there being enough in the case without regard to it to sustain the conviction, and the case going off on another point. It is to be noted, also, that there was no discussion of the subject, nor any suggestion of the considerations which led to the views expressed. It was nothing but a passing observation, thrown off in argument, upon which it was not necessary to dwell, the case being effectively disposed of otherwise, even assuming it to be correct. All that is ventured to be said is that the objection that the defendant could not be convicted as a principal in making the report was probably true, an inconsequential statement, by which it is not expected that any one would be bound. We feel justified, therefore, in adhering to the conclusion, which, after a careful consideration of the subject, we have been constrained to reach.

It is further said, however, that there was a variance as to the purpose with which the falsification of the reports to the Comptroller was made, which was to deceive that officer, and not to injure the bank or to deceive the directors or the agents appointed to examine it as charged. There was no exception taken at the trial, which entitles the defendant to raise this question, except the general one to the refusal of the court to direct a verdict, which is not enough. But, without stopping over that, there is no merit in the point. The contention is that the false entries, being consequent upon and induced by the complaints of the Comptroller, and for the purpose of meeting and overcoming them, must have been intended to deceive him, and could not have been for anything else. The intent, no doubt, is of the essence of the offense, and must be proved as laid. United States v.

Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520; McKnight v. United States, 111 Fed. 735, 49 C. C. A. 594; Marrin v. United States, 167 Fed. 951, 93 C. C. A. 351; United States v. Corbett, 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. ——. But even if the falsification of the entries, following upon the complaints of the Comptroller, may have been induced thereby, warranting the inference that the Comptroller was to be deceived, that is not the only conclusion that could be drawn, and still less can it be urged, as it is, that there was no evidence on the subject of intent, in the face of the contention that it was all one way. So far as concerns both the falsification of the entries in the books and in the reports, the misleading and deceiving of the examiners appointed by the Comptroller may just as well have been in the mind of the defendant as the deception of the Comptroller himself. As is well known, the Comptroller does not in person, except possibly in rare cases, make an examination into the condition of national banks, whatever opinion he may have been led to form, based upon reports sent in. This duty devolves on the examiners, whom he appoints for the purpose, and it is by falsifying the books and making them speak differently from what they should that these examiners are able to be deceived. The same deceptive purpose in the falsification of the reports called for by the Comptroller may not be so clear. But it is not so foreign or remote as by no possibility to be involved. In United States v. Corbett, 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. ——, it was argued to the contrary of what it is here, that the Comptroller was not an agent appointed to examine into the condition of such banks within the meaning of the act, and could not therefore be charged as intended to be deceived by false reports, the examiners appointed by him being the parties to whom this applied. The two contentions complement each other, and dispose of this part of the act if sustained. But the fact is that neither of them is sound. The bank examiners, equally with the Comptroller, are agents appointed to examine the affairs of national banks, not only within the meaning, but within the express terms, of the law, and equally with the Comptroller consult and rely in the examinations which they are required to make on the reports sent in by the association, and are as much likely, if these reports are falsified, to be deceived and misled thereby. This the law recognizes and provides against, making it an offense to falsify any such reports with intent to deceive them, which as a directly contemplated possibility the defendant may well be presumed to have designed.

The same is true as to the intent to injure and defraud the association. It is said that inasmuch as the reports which are falsified represented the condition of the bank to be more favorable than it was, an intent to injure it cannot be implied. The same contention was made in the Corbett Case, just cited, and is conclusively disposed of by what is there said. The purpose of such reports being to enable the Comptroller and the examiners acting under him the better to supervise, and, if necessary, to correct the administration by its officers of the bank's affairs, it is most obvious, that a misrepresentation, the effect of which is to mislead and deceive either of them, could hardly fail to operate to the injury of the bank. And those therefore who

change and falsify the entries in such reports in the way charged, having committed themselves to this possible result, must be regarded as having intended that it should come about. The intent to injure and defraud the bank in the present instance, was thus rightly charged, and it was for the jury to say whether it had been made out, as to which they had the right to judge by the nature of the items falsified, their relation to the condition and conduct of the bank's affairs, and the circumstances under which the falsification was done. This question was submitted to the jury with sufficiently adequate instructions, and having been found against the defendant, that is the end of the matter here.

It is finally urged that the jury were allowed to convict on the uncorroborated testimony of accomplices, without being warned as to the caution with which such testimony is to be received. It is denied by the government that the clerks who made the false entries under the direction of the defendant were in any sense accomplices; and the requests in which it is assumed that they were could not therefore have been affirmed. But in those where this mistake is avoided, the court was asked to charge that if these witnesses were accomplices their testimony was not to be regarded unless corroborated by unimpeachable testimony in some material point. This went far beyond the accepted rule, and was properly refused. There is nothing which forbids the conviction of a defendant, at common law or in a federal court, on the uncorroborated testimony of an accomplice, as is there assumed. 12 Cyc. 453; United States v. Giuliani (D. C.) 147 Fed. 594. No doubt there is a well-established practice, sanctioned by long practice and judicial approbation to caution juries about accepting the evidence of an accomplice without material corroboration, coming, as it does, from a polluted source. But this is as far as the matter goes. See Holmgren v. U. S., 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. ——. And corroboration not being indispensable, an instruction that the credibility of a witness is weakened by its absence, and that the jury ought to acquit where there is none, encroaches on the prerogatives of the jury who have a right to rely on such evidence if they are satisfied with it (12 Cyc. 600); and the court may therefore, without error, refuse to charge that they ought not. Commonwealth v. Bosworth, 6 Gray (Mass.) 479. The requests here were much more than cautionary. They went the full length of declaring that the testimony of the witnesses, if accomplices, without being corroborated by other unimpeachable testimony in some material part was not to be believed. To have given these instructions would have been a clear mistake. The court may not have said all in this direction that it might. But it did say that the evidence was to be carefully scrutinized, which called the attention of the jury to their duty in this regard, and it was not bound to say more.

The judgment is affirmed.