## MARGARET FRAGA, BY ALFRED FRAGA, HER GUARDIAN AD LITEM, v. HOFFSCHLAEGER COMPANY, LIMITED.

## No. 1360.

### ERROR TO CIRCUIT COURT FOURTH CIRCUIT. HON. J. W. THOMPSON, JUDGE.

ARGUED AUGUST 4, 1922.                    DECIDED SEPTEMBER 13, 1922.

### PETERS, C. J., EDINGS AND PERRY, JJ.

STATUTES—*constitutionality—substitute judges.*

Section 2277, R. L. 1915, which provides that the chief justice of the supreme court may, in the case of a vacancy in the office of circuit judge of one of the circuits, authorize a circuit judge of another circuit to preside at the trial of any pending cause, is not in conflict with Section 80 of the Organic Act which provides that the President shall nominate and by and with the advice and consent of the Senate appoint the judges of the circuit courts.

NEW TRIAL—*misconduct of jurors—newspaper comments.*

Not every newspaper publication relating to a case on trial furnishes ground for a new trial. The result must depend upon the circumstances of each particular case.

SAME.

A newspaper publication to the effect that the defendant corporation in a pending action for damages for negligence is protected by accident insurance and that the insurance company offered to settle for a small amount, which article was published without the direction or knowledge of the plantiff or her attorneys, is not *per se* ground for a new trial or for the entry of a mistrial.

TRIAL—*withdrawal of juror—discretion of trial court.*

A motion to withdraw a juror and to enter a mistrial is in the sound, judicial discretion of the trial judge and his ruling thereon will not be disturbed in the absence of an abuse of discretion.

EVIDENCE—*opinion—standard treatises—for purpose of contradiction.*

Where an expert witness gives in evidence his opinion as to the probable length of time that will elapse before a patient

will recover from injuries received in an accident and in cross-examination names certain authors as supporting his opinion, it is not error for the trial judge to refuse, on the cross-examiner's request, to order the witness to leave the court-house, procure the books referred to, return to the stand and search for and point out the passages supporting his opinion,—the witness and opposing counsel offering to place the books at the cross-examiner's disposal and to permit a recall of the witness at any time for further cross-examination.

NEGLIGENCE—*contributory negligence—care required.*

A girl of thirteen cannot be said, as matter of law, to be guilty of contributory negligence merely because, while walking on a side-walk adjoining a public highway, she permitted her attention to be momentarily diverted to the opposite side-walk by the voice or call of another person and in consequence of this distraction fell into a freight elevator pit left by the defendant open and unguarded.

OPINION OF THE COURT BY PERRY, J.

This is an action for damages for the negligence of the defendant corporation resulting in physical injuries to the plaintiff. The jury rendered a verdict in favor of the plaintiff for the sum of $7,250. The case comes to this court on a writ of error. The more important assignments of error will be considered in detail.

The case was tried in Hilo in the fourth judicial circuit of this Territory at a time when a vacancy existed in the office of circuit judge of that circuit. The trial was presided over by the Honorable J. W. Thompson, Judge of the Circuit Court of the Third Judicial Circuit, upon the written request and authorization of the chief justice of this court. One assignment of error is that this request and authorization were invalid because, as it is said, the statute purporting to provide for such temporary grants of authority is in conflict with the Organic Act of the Territory and therefore void. The statute under which the chief justice acted in requesting Judge Thompson to "preside at the trial of any cause or causes pending in the circuit court of the fourth circuit" is

R. L. 1915, section 2277, which reads as follows: "Whenever on account of disqualification, inability to attend, vacancy in office, or any other cause or causes, there shall be no judge of the circuit court of any particular circuit who can preside at the trial of any cause pending in such court or in chambers in such circuit, or at any term of such court, a circuit judge of some other circuit who shall be thereto authorized by the written request of the chief justice, may preside at the trial of such cause, or at such term, as the case may be." It is not contended that the chief justice's request and authorization to Judge Thompson were not in pursuance of, or in conformity with, the provisions of this statute. The only contention is that the statute is in contravention of section 80 of the Organic Act, which reads as follows: "That the President shall nominate and, by and with the advice and consent of the Senate, appoint * * * the judges of the circuit courts, who shall hold their respective offices for the term of four years, unless sooner removed by the President." In our opinion the objection is not well founded. In acting as he did the chief justice did not appoint or endeavor to appoint any one as a judge of the circuit court of the fourth circuit; nor does section 2277 purport to authorize the appointment of a judge of any circuit in case of a vacancy. All that the statute purports to do is, and all that the chief justice did under that statute was, to authorize a judge of another circuit, who was duly appointed to his office by the President and the Senate of the United States, to temporarily perform certain duties within the ordinary territorial jurisdiction of the fourth circuit. The statute and the designation by the chief justice both recognize that a vacancy exists in the fourth circuit and both proceed upon the theory of such vacancy. Neither attempts to provide for or to make an appointment of a judge of the fourth circuit.

Neither purports or attempts to in any wise limit the powers granted by section 80 of the Organic Act to the President or to the Senate .of the United States. Both proceed upon the assumption that in due course the power of appointment referred to in section 80 of the Organic Act will be exercised by those who are by that act vested with the power so to do. There is no conflict between R. L. section 2277 and section 80 of the Organic Act.

On the afternoon of the first day of the trial before the jury a newspaper published in Hilo published an article reading as follows:

### "FOURTEEN-YEAR-OLD HILO GIRL SEEKS $11,500 DAMAGES FROM INSURANCE FIRM FOR INJURIES.

"Pretty Miss Margaret Fraga, fourteen-year-old Hilo school girl, fell down a sidewalk elevator shaft, owned by the Hoffschlaeger Company, Ltd., last August.

"When her case was called in the Circuit court this morning she asked for $11,500 damages for injuries which she declares she suffered from her fall, from which she declares that she has never entirely recovered.

"Shortly before noon, the trial jury was completed and the beginning of testimony will start when court convenes this afternoon.

#### "Unusual Circumstances

"The circumstances surrounding the case are rather unusual. According .to the Insurance company, which is defending the case for the defendant, it is admitted that Miss Fraga was walking along Keawe street and fell down the elevator shaft, but they declare that the complainant did not suffer serious injuries. It is reported that the Insurance company, at the time of the accident, agreed to settle for a small amount of damages. It is admitted that half of the iron grating, which was supposed to cover the shaft, was left unguarded.

"Miss Fraga declares that her injuries, both physical and mental, were so serious that she has not entirely re-

covered.   The twelve men who were selected to hear the
evidence in the case are as follows: James Davis, George
H. Akau, John Kahiawi, Antone J. Kimi, James Kauhu-
lapua, Charles Johnson, T. O. Mitchell, E. B. Hamauku,
A. Arasuda, S. K. Maka, E. A. Namohala, and Harry
Hapai.

"Questions Jurisdiction

"Judges William L. Stanley and Charles F. Parsons
are appearing for the Insurance company, who are
shouldering the responsible for the Hoffschlaeger com-
pany.   It is expected that this case will require two days.

"Yesterday, when the case was first called, Judge W.
L. Stanley filed a motion that Judge Thompson had no
jurisdiction to hear this case.   The motion was over-
ruled and the case was continued until this morning."

On the first day of the trial evidence had been pre-
sented to the jury after the noon recess only.   Upon the
opening of court on the second day of the trial counsel
for the defendant presented a motion for the withdrawal
of one juror and for the entry of a mistrial, basing his
motion upon the ground of the newspaper publication
of the article above quoted.   Affidavits for and against
the motion were filed and the motion was denied by the
presiding judge and the trial proceeded.   After verdict
for the plaintiff the defendant in support of a motion for
a new trial, based *inter alia* upon this same ground of the
appearance of the publication in the local paper, pre-
sented additional affidavits upon the subject.   The motion
for a new trial was denied by the presiding judge.

In support of the errors assigned in connection with
the denial of these two motions it is contended that the
publication of the article was prejudicial to the defendant
in that the article states, first, that an insurance com-
pany was the real defendant and was "shouldering" de-
fendant's case and the responsibility involved, and, sec-
ond, that the insurance company had agreed to settle
the claim of the plaintiff for a small amount of damages.

It is well settled that not every newspaper publication relating to a case on trial furnishes ground for the granting of a new trial. The result must depend upon the circumstances of each particular case including the nature of the article and the prejudice which it is likely to have caused to the losing party. It cannot be doubted that if in the case at bar the publication had been made prior to the impaneling of a jury for the trial of the case and if under those circumstances the prospective jurors had been examined on their *voir dire*, as to the reading of the article, as to the impressions that it made upon them and as to whether or not they were able to discard those impressions, if any, and to try the case solely upon the evidence as it should be adduced at the trial and upon the law as it might be given to them by the presiding judge, and had answered, satisfactorily to the court, that either the article had not been read or had left no consequential impression upon them or that they could discard those impressions and try the case solely upon the law and the legal evidence, no juror thus answering satisfactorily could have been successfully challenged. Under those circumstances every such juror would be perfectly eligible to sit at the trial of the case. Intelligent jurors throughout the land are presumed to read newspapers and to read in them not only other current news but also reports of accidents and other facts involved in controversies which may later become the subject of judicial investigation. No one is in this jurisdiction successfully challenged nowadays on the mere ground that he has read something in the newspapers relating to the case on trial. 20 R. C. L., p. 254, Sec. 36; 2 Thompson on Trials, Sec. 2561. The examination is always pursued further to ascertain whether in spite of the reading the proposed juror is able to give both parties a fair trial purely upon the law and the evidence. In the case at bar the defendant

did not avail itself of the opportunity, which it had in
conformity with correct and well recognized procedure,
to ask at the opening of the second day's session of the
court that the trial be suspended and the jurors re-
examined in order to ascertain how many, if any, of them
had read the article in question, how many, if any, had
received from the article impressions as to the merits of
the case on trial and how many, if, any, were not able
to sit with unprejudiced minds in the further trial of the
case. *Marrin* v. *United States,* 167 Fed. 951, 953; *Lindsey*
v. *Tioga Lumber Co.,* 32 So. (La.) 464, 466; *Copeland* v.
*Ry. Co.,* 75 S. W. (Mo.) 106, 114, 115; *State* v. *Hoffman,*
45 So. (La.) 951, 955. Most, if not all, persons available
as jurors nowadays are familiar with the business practice
of corporations and individuals of securing themselves
against loss from accidents due to the negligence of them-
selves and of their servants and agents by taking out in-
surance with companies existing for the purpose.    It
would not be good ground for challenge of a proposed
juror that he knew or had read in advance of the trial
that the defendant in any given case was thus secured
by insurance provided he could answer with satisfaction
to the court that he could easily obey the instructions of
the court that that fact should not affect his verdict one
way or the other.    Similarly, as to a published suggestion
that a compromise had been offered, whether that sug-
gestion stands by itself or in combination with a reference
to insurance.    In the case at bar the defendant had the
opportunity already adverted to to reexamine the jurors
as to their knowledge of their duty in this respect.    We
venture to say that in all probability had such an exam-
ination been had it would have been found that the jurors
understood their duty in the premises and were qualified
to continue sitting as jurors in spite of the fact that they
had read the article in question.    It is worthy of note in

this connection that although a period of two weeks elapsed from the appearance of the article until the filing of the motion for a new trial the defendant was unable to show that more than one juror had read the article during the trial or that that juror had been influenced by what he read. To permit a losing party to content himself with a mere motion to withdraw a juror and to enter a mistrial, without an immediate examination of the jurors to ascertain their state of mind due to the appearance of the newspaper article, would be to encourage him to take chances on the verdict of the jury, preserving an exception based upon a supposed state of facts not as clearly disclosed by any means as it might have been had there been an immediate examination of the jurors. As was said in *Partello* v. *Missouri Pacific Ry. Co.*, 145 S. W. (Mo.) 55, 58: "It was competent for the defendant to have shown then, by an examination of the jurors, whether or not an opinion had been formed, or whether the jurors had been or would be influenced by having read the newspaper article. This the defendant did not do and it would not do to permit a party to take the chance of a favorable verdict and failing in that to claim the existence of prejudice of jurors which he failed to show when he had the opportunity. * * * When the court made its ruling nothing was shown more than the mere reading of a newspaper article bearing upon the case by two jurors and that alone was not enough to warrant the court in discharging the jury." See also *Shafer* v. *Ry. Co.*, 201 S. W. (Mo.) 611, 615.

It is true that in many cases in New York, Illinois and perhaps other states it has been held that the mere statement, direct or indirect, by counsel to or in the presence of the jury that the defendant is protected by accident insurance is reversible error. This is an extreme view and does not appeal to us as sound. We do not care to

follow it. We think that with a possible occasional exception due to particular circumstances ordinary cautionary instructions would cure what otherwise might be error. There are other cases, of course, which hold that cautionary instructions do cure. See, for example, *Holt* v. *Manufacturing Co.*, 98 S. E. (N. C.) 369, 370, 371. There is a difference worthy of mention between evidence, offers of evidence and argument adduced in court, on the one hand, and newspaper publications out of court, on the other hand. The latter, it may well be presumed, would not have the same effect upon a jury as the former. *Hollenbach* v. *McCord*, 132 S. W. (Mo.) 1189, 1190, 1191. Nor was there any evidence in the case at bar tending to show that the plaintiff or her attorneys or any one else in her behalf caused the publication in question to be made. The only evidence on the subject is to the effect that the plaintiff's attorneys did not cause the publication and the trial judge so found as a fact.

A motion to withdraw a juror and to enter a mistrial, even if a correct form of procedure in this jurisdiction, is at best addressed to the sound judicial discretion of the trial court. *Marrin* v. *United States, supra;* Fed. Cas. No. 14,858; *Pirrung* v. *Supreme Council*, 93 N. Y. S. 575, 578; *Heiler* v. *Storage Co.*, 105 Atl. (N. J.) 233. We cannot find that in denying the motion the trial judge in the case at bar abused his discretion. Whether in this jurisdiction a motion of this kind (for the history of this method of procedure, which originated in a fiction, see *Usborne* v. *Stephenson*, 48 L. R. A. (Ore.) 432, 435, 438) can be entertained in the absence of reason shown why any particular juror should be excused or should not be permitted to longer serve in the case is a question that need not be decided in this case. For other reasons already stated the motion in this instance was correctly overruled.

The accident in question in this case consisted in the plaintiff's falling into a freight elevator shaft in a sidewalk adjacent to one of the public highways of Hilo. Half of the iron grating or door over this shaft had been left open by the defendant or its servants for the discharge of freight and the opening had been left unguarded and unprotected in any way. The plaintiff was thirteen years of age, had been walking on the side-walk in the direction of the elevator pit and a second or two prior to the fall had had her attention diverted to the opposite side of the street by the voice of another. It was during this momentary distraction that she fell. On behalf of the plaintiff the physician who attended her immediately after the accident and for some weeks thereafter testified at length concerning the nature and the extent of her injuries and the probability as to the time that would lapse before she could recover completely from an injury in the general locality of one of the knees. Testifying that as complete recovery had not happened within a stated time (three or four weeks) he gave it as his opinion that she would not recover until some time between her twentieth and twenty-fourth year of age. Pressed on cross-examination for reasons in support of these views, he named certain writers of medical works as authorities in support of his opinion. Counsel for the defendants thereupon asked the witness to produce the books written by these authors, which he (the witness) had said were at his home or at his office in Hilo, and asked the court for an order compelling the witness to obtain and produce these books in order that counsel for the defendant might ask the witness to point out the passages supporting his testimony. The motion was denied and the request disallowed. At that same time, however, the witness informed counsel for the defendant that the books at his home and office were at counsel's disposal and counsel for plaintiff

made the offer, and asked that it be placed of record, that the plaintiff would consent to the recall of the witness at any time by counsel for the defendant for further cross-examination.    In so far as the record shows none of these offers was availed of by counsel for the defendant.    No offer was subsequently made in court to show from the books that they did not support the witness' opinion or that they contained passages to the contrary.

The refusal of the court to order the witness to procure the books at his home or office and to produce them to counsel for further cross-examination is assigned as error.    This assignment cannot be sustained.    The general rule seems to be well settled that medical books are not admissible as evidence of the truth and correctness of the statements and views therein contained.    8 Ency. Pl. & Pr., 768, 769; 3 Wigmore on Evidence, Sec. 1700; 22 C. J., Sec. 831.    It seems to be equally well settled that when a medical expert cites a book as authority for his statement passages in the book to the contrary may be shown him in cross-examination and further questions asked of the witness which are intended to bring forth an admission that the witness was in error.    Same authorities. But counsel in the case at bar sought to go further than this.    He did not produce any books, he did not confront the witness with any passages in conflict with his testimony, but he sought to have the witness compelled to leave the stand and proceed to his home or office to obtain the books, return with them to the court-house and then to search for passages tending to confirm the opinions advanced by him in evidence.    The most that can be said in favor of the defendant in this respect is that the matter was at best in the discretion of the trial judge and that that discretion having been exercised in the way that it was no reversible error is to be found in the ruling.

Another assignment of error is that upon the undis-

puted evidence the plaintiff was guilty of contributory negligence in permitting her attention to be distracted to the opposite side of the road and in not at all times keeping her eyes fixed on the sidewalk ahead of her sufficiently to discover the opening which was there. The evidence is indeed undisputed on this point. The plaintiff was a minor thirteen years of age. She had often passed along this same side-walk and had seen the freight elevator and its covering. It was during the momentary diverting of her attention by the call from the opposite side-walk that she fell. The degree of care required of a child is different from that required of an adult. A child is "only required to use the care appropriate to his age, experience and mental capacity." *Ry. Co.* v. *Heaton,* 191 Fed. 24, 26. See also *Long* v. *Ry. Co.,* 162 Ia. 11, 21. The degree required of a bright, intelligent child is perhaps different from that required of one less favorably endowed in these respects. The degree of care required of a child of eight is different from that required of a minor of thirteen or sixteen. Common sense and common experience must be resorted to by jurors in determining questions of negligence in the case of minors as well as in the case of adults. It certainly cannot be said that upon the undisputed evidence in this case the jury should have found as a matter of law that the plaintiff was guilty of contributory negligence. It is at least open to grave doubt that if by its verdict the jury had found that the plaintiff was guilty of contributory negligence such a verdict could stand; but certainly a verdict finding her not guilty of negligence cannot be set aside on the ground that it was contrary to the evidence or lacking in evidence to support it.

It is further assigned as error that the verdict was excessive and that it must have been due to bias and prejudice on the part of the jury. The latter part of this

contention has reference merely to the newspaper publication and that is already disposed of above. If the jury accepted as true the evidence of Dr. Osorio, who testified on behalf of the plaintiff as to the nature and extent of her injuries,—and it was competent for the jury to do so and to disregard the evidence of another medical expert who testifed to the contrary—a verdict in the sum of $7,250 cannot be held to be excessive or to contain evidence within itself that it must have been the result of bias or prejudice.

There are other assignments of error relating to so-called restrictions of the right of cross-examination and to the instructions of the court. Suffice it to say that we have examined them all with care and find no reversible error.

The judgment is affirmed.

*W. L. Stanley* (*Smith, Warren, Stanley & Vitousek* on the brief) for plaintiff in error.

*R. J. O'Brien and Fred Patterson* (also on the brief) for defendant in error.