## No. 21156.

BERNARD THOMAS, INDIVIDUALLY AND D/B/A ART B.
THOMAS SHOWS, AND THOMAS M. MELEGA *v.* LORETTA LOU
PACHECO, A MINOR, BY MABEL ROMAN, HER NEXT FRIEND.
(429 P.2d 270)

Decided June 26, 1967.

CHARLES D. PIERCE, H. MYERS BUMGARDNER, J. DONOVAN STAPP, for plaintiffs in error.

BELLINGER, FARICY & TURSI, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties appear in this court inverse to their alignment in the trial court so we will refer to them as they were below or by name.

Plaintiff Pacheco suffered severe permanently disabling injuries when she fell from an amusement ride called the "Scrambler" which was owned by Thomas and operated by Melega, a sixteen-year-old boy. A jury

verdict was returned in favor of the plaintiff. The defendants are here seeking to reverse the judgment.

The defendants contend that there is insufficient evidence to establish negligent conduct on their part; and that there was no showing in the trial court that any conduct of theirs, negligent or otherwise, was the proximate cause of Pacheco's injuries. On this ground they complain of the court's failure to direct a verdict in their favor. In the event we do not determine the evidence insufficient to support the jury verdict, they then contend that the trial court committed error in the giving of several of the instructions and that they are, therefore, entitled, at least, to a re-trial under the proper instructions to the jury.

The amusement device owned by Thomas was described as a carnival ride consisting of twelve individual cars — variously referred to as "cars," "seats" or "buckets." The device has a center column — the main drive of the ride — with three overhead arms extending out from it. At the end of each of the arms another column extends downward and to this are attached four cars at right angles to each other. This column is so constructed that the individual cars may revolve. When the "Scrambler" is in operation, the three main overhead arms turn in a clockwise direction in a 60 foot circle at 10 or 11 revolutions per minute. The four seats suspended from each of the arms turn in a counter-clockwise direction at 11 or 12 revolutions per minute. Thus, while the entire ride moves in a circular clockwise pattern, very much in the manner of a merry-go-round, each of the individual seats in which the passengers are riding is turning in a counter-clockwise direction.

The ride was in charge of the sixteen-year-old Melega — the sole attendant. He was both the ticket-seller and operator. He permitted the plaintiff, aged seven years, together with a seven-year-old companion, to enter upon the ride. The boy did not keep the children in view at anytime after he started up the ride because, as he

testified, he didn't see Pacheco until she was on the ground. The seat on which the children rode would accommodate comfortably three average size adults. The children were not strapped in or otherwise secured to the seat, and each constituted a "free body" in the "bucket." There was a bar fastened across the front of the seat to which the children could hold on, but the depth of the seat — 20 inches — and the height of the seat from the floor — another 20 inches — indicated that the children's feet were dangling and could not be braced on the floor, thus they were "free" to be buffeted forward and backward as well as side-ways on the seat. The space between the seat and the bar was sufficently large to permit a child's body to pass between the seat and the bar. The expert testimony was that the centrifugal force, generated on the outer side of the circle as well as the inner clockwise circle, was such that it "throws" the passenger both forward and backward and that the main force was to the outside of the car, the side out of which Pacheco fell.

Pacheco tried to hold on, but lost her grip. Pacheco's seven-year-old companion took hold of Loretta's hand and, she said, "I holded on as long as I could." Pacheco said, "Help, I'm falling." Then Pacheco went off the seat, down to the floor where people put their feet, and fell out of the car through the opening above the step. The sixteen-year-old operator stated that he ran the car at "full throttle." Pacheco and her companion both testified that "it kept going faster and faster." The operator testified that there was a braking device which he could use, but he did not use it until he saw plaintiff on the ground.

The owner, Thomas, admitted that he had no rule or policy concerning small children riding on the device when unaccompanied by an older or adult person, and that he had not instructed the operator about children riding without older responsible persons being with them. He admitted on the witness stand that the deter-

mination of the age of the child who was permitted to ride unaccompanied by an older responsible person "depended upon the use of common sense."

This case was tried before the rule concerning the degree of care owed by an amusement ride operator to his passengers was promulgated by *Lewis v. Buckskin Joe's, Inc.*, 156 Colo. 46, 396 P.2d 933. Therefore, with reference to the instruction given in this case on the degree of care, the defendants had the advantage of being charged with the duty of using only ordinary care. We believe that the record as summarized above presents physical facts and operational procedure from which the jury as judges of what constitutes ordinary care could infer that Thomas and Melega were negligent.

Defendants attack four of the instructions given by the court as particularly prejudicial to them and as erroneous statements of the law.

One of the instructions was numbered 7, dealing with "proximate cause." The instruction as given has been used by the courts for a number of years as a so-called "stock" instruction. We find proximate cause similarly defined in *Hook v. The Lakeside Park Company*, 142 Colo. 277, 351 P.2d 261, and in *Stout v. Denver Park and Amusement Company*, 87 Colo. 294, 287 P.650. It was not error for the court to give the instruction.

On the court's instruction No. 8, defendants cite as error the following portion thereof:

"* * *, and if children who are invited or permitted to ride or use an amusement facility have not reached the age at which they are able to understand, appreciate and avoid the *danger* incident thereto, ordinary care should include the taking of precautions to protect them which might not be necessary in the case of adults or older children." (Emphasis added.)

Defendants contend that this instruction "leaves in the minds of the jury an impression that there was intrinsic danger present in the operation of the Scrambler ride" and that the plaintiff offered no proof that

the amusement ride was in any way "inherently or intrinsically dangerous." We cannot find in this instruction any charge that the ride was inherently dangerous. We do hold from the evidence, however, that the jury could find that such a ride was dangerous to children. See Anno. 75 A.L.R.2d 792.

In *Brown v. Columbia Amusement Co.*, 91 Mont. 174, 6 P.2d 874, the court, in commenting on a merry-go-round — the most common of amusement rides for children — and noting the inferences which could be drawn by a jury in connection with its operation, said:

"The reasonable inference from the evidence is that the operator of the merry-go-round, in this case considered, accepted as patrons any and all persons who had the price of a ride — a nickel — and made no exception as to children of an age rendering them incapable of apprehending danger or caring for themselves. It did not require parents to accompany such children but, impliedly at least, represented to such parents that an attendant would ride the moving platform and look after such children. With this inference drawn from the testimony, the jury was called upon to determine what steps the operator should have taken, in the exercise of ordinary care under the circumstances and the known danger encountered to render the amusement reasonably safe from such danger.

\* \* \*

"Manifestly, a platform moving in a circle, and thus developing centrifugal force, must be known to any reasonably prudent man to be a dangerous place for very young and immature children, and if the operator of such a device, for the sake of the nickels he may collect, does not prohibit such children from riding thereon, ordinary care should dictate that he take such steps as are necessary for their protection, such as promulgating and enforcing rules compelling a parent or other responsible person to ride with them and care for them; provide straps for fastening them on, or pro-

vide an attendant to ride the moving platform who will be vigilant to discover any child not maintaining its equilibrium and 'to immediately rescue any apparently in danger.' "

■ We are of the opinion that the evidence here concerning the simultaneous movements of the ride in a clock-wise and counter-clockwise direction, propelling a rider forward and then backward, and at the same time generating centrifugal force upon the "body" toward the outside of the "bucket" presents a stronger case than a merry-go-round ride. We agree with the reasoning of the Montana court in connection with permitting children to ride on any such rotating ride generating centrifugal force.

■ With reference to two other instructions, numbered 12 and 13, defendants contend that the jury was permitted by them to take into consideration the operation of the ride at "full throttle" and the failure to provide seat belts or restraining straps as negligence. Defendants contend that there was no testimony by any one, experts or otherwise, that either would constitute negligence. If we understand the contentions of the defendants correctly, we have answered their argument in *Blackburn v. Tombling*, 158 Colo. 369, 407 P.2d 337. In that case we said that when the jury is the trier of the fact and the issue to be determined is what constitutes reasonable and due care, the jury function cannot be usurped by the introduction of expert or lay opinion of witnesses as to what constitutes either due care or negligence.

■ In this case the jury was shown both movies and "still" pictures of the ride and heard verbal description of the operation of the Scrambler by two expert engineers who rode thereon and who computed the forces involved. In addition there was the testimony of the two children as to their attempts "to hold on" while the force was exerted upon Pacheco toward the side of and out of the car. The jury could determine from seeing

various pictures and from the description of the crossbar which was attached in place after the passengers were seated that such a bar was not intended to and did not prevent the free play of the body and that the movement forward, backward and sideways could not be prevented by the bar whereas a seat belt, the jury could infer from common knowledge, would be just such a device as to prevent such free play of the. body. The jury could infer that the free play caused the wresting of the bar from Pacheco's grasp and further that the force generated by the speed was such as to overcome Pacheco's strength and ability to retain her hold on the bar or the seat or the side of the car as well as overcoming the strength and ability of her companion to retain her hold on Pacheco. Direct testimony on these factors is not necessary in order for the jury to consider them.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCWILLIAMS and MR. JUSTICE HODGES concur.