DOUGLAS J. SHERRY, a minor, by his Next Friend HENRY J. SHERRY; HENRY J. SHERRY and MARVELYN J. SHERRY, individually, Plaintiffs-Appellants, *v.* KATHLEEN ASING, Defendant and Third-Party Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Third-Party Defendant-Appellee

NO. 5413

FEBRUARY 5, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE SODETANI ASSIGNED BY REASON OF VACANCY

136

138

OPINION OF THE COURT BY OGATA, J.

Plaintiffs-appellants, Douglas J. Sherry, a minor, by his next friend Henry J. Sherry, and Henry J. Sherry and Marvelyn J. Sherry, individually, brought this action in the First Circuit Court to recover damages for injuries sustained by plaintiff-appellant Douglas J. Sherry,[1] a mentally slow seventeen year old, and the son of plaintiffs-appellants Henry J. Sherry and Marvelyn J. Sherry, when he was struck by an automobile driven by defendant-appellee Kathleen L. Asing.[2] After a trial before a jury a special verdict was returned finding no negligence on the part of the defendant-appellee. Plaintiffs-appellants appeal from the judgment entered upon such a verdict.

This automobile-pedestrian collision occurred before sunrise, at about 6:30 a.m. on January 28, 1971, on Keolu Drive, a six-lane roadway in Kailua, island of Oahu, approximately 105 feet north of its intersection with Akumu and Iana

---

[1] Hereinafter, the term plaintiff-appellant, when used in the singular, will refer to Douglas J. Sherry.

[2] The complaint filed in this case was superseded by a subsequent first amended complaint in which plaintiffs-appellants also named the City and County of Honolulu as a defendant, but the plaintiffs-appellants' claim against the City and County of Honolulu set forth in the second count was dismissed by the trial court before trial. Hereinafter, the term defendant-appellee will refer to defendant-appellee Kathleen L. Asing, and the defendant City and County of Honolulu will be designated as the City.

Streets.[3] Defendant-appellee was returning home from work when she was involved in this unfortunate accident. She had commenced working at Pan American Airlines as a dishwasher at 10:00 p.m. on January 27, 1971, and worked until the following morning when she punched out at 5:58 a.m. It was drizzling and still dark at the time she entered Keolu Drive. The street lighting along the portion of Keolu Drive north of Akumu and Iana Streets was of the dim incandescent type, although the opposite section of Keolu Drive was illuminated by bright mercury vapor lights.

Plaintiff-appellant Douglas Sherry could not testify to the events just prior to the accident, or to the way in which the accident occurred, because he sustained head injuries, was rendered unconscious for two or three days and suffered retrograde amnesia due to the accident. He did, however, testify to his habitual pattern when en route to school. He further testified that he had started out along his accustomed route to school the morning of the accident; that he almost always crossed Keolu Drive at the crosswalk. In a portion of his deposition which was read into the record he stated, however, "[W]ell, you see, if I did cross the street without on the crosswalk, if I cross the street I look way far, I look both ways far when I cross the street; but if I did cross the street the lady probably came fast. If I did jaywalk, if the car was way, way far I would go. If it was close, I wouldn't go, no way."

Defendant-appellee was called as an adverse witness by the plaintiffs-appellants. She testified that she was travelling at a speed of about 20-25 miles per hour on Keolu Drive after she had crossed the intersection of Keolu Drive and Akumu Street; that she was driving her vehicle in the center lane of the three lanes for traffic proceeding in the northerly direction; that she did not see plaintiff-appellant Douglas Sherry until he was approximately ten feet in front of her vehicle,

---

[3] Keolu Drive intersects perpendicularly with Akumu Street from the mauka (west) direction, and ordinarily the makai (east) continuation or prolongation of Akumu Street would be also a part of Akumu Street. However, in this case the makai portion of the continuation or prolongation of Akumu Street is named and designated as Iana Street.

although he had to cross the four lanes of Keolu Drive to the left of defendant-appellee before entering her lane. Defendant-appellee further testified to the effect that she could not stop in time to avoid striking the plaintiff-appellant; and that plaintiff-appellant was not crossing in the pedestrian crosswalk when her 1966 red Volkswagen vehicle struck him.

The physical evidence showed that plaintiff-appellant was found lying within the makai-most lane (outside lane for vehicle travelling north) of Keolu Drive 129 feet north of the intersection of Keolu Drive and Iana Street after he was struck by defendant-appellee's automobile. Plaintiff-appellant was thrown to the makai-most lane by the impact, according to defendant-appellee's testimony, but it was not clear whether he was or was not pushed, thrown, or carried forward.

Plaintiff-appellant Douglas Sherry was chronologically seventeen years of age at the time of the accident. He was considered a slow learner and attended special classes all through school, including Kailua High School, which was the general direction in which he was going just prior to this accident. His mother, Mrs. Marvelyn J. Sherry, testified that Douglas had been slower than her other children since infancy. According to his own testimony, Douglas dressed himself each morning and walked to school alone.

There was an attempt made by plaintiffs-appellants to include the City and County of Honolulu (City) as a party-defendant in addition to defendant-appellee, after the defendant-appellee had indicated in her pre-trial deposition that the street illumination along the north side of Keolu Drive starting from Akumu Street was inadequate. Plaintiffs-appellants in their first amended complaint filed in the court below on November 17, 1971, alleged in a separate count (count II) that the City negligently maintained, constructed, placed and designed Keolu Drive, the areas adjacent thereto, and the street lights thereon in the vicinity where plaintiff-appellant was struck by an automobile operated by defendant-appellee, and that as a proximate cause of such negligence plaintiff-appellant was injured. Prior to trial, however, the trial court dismissed plaintiffs-appellants'

claim against the City by granting a summary judgment in its favor and against the plaintiffs-appellants for failure to file a timely notice of claim against the City within six months of the accident.

The plaintiffs-appellants, the City, and the defendant-appellee have in their respective briefs classified and discussed all the alleged errors committed by the trial court and claimed by plaintiffs-appellants to be prejudicial into five separate basic groups: (1) whether the court erred in dismissing plaintiffs-appellants' claim against the City because of plaintiffs-appellants' non-compliance with the six-month statutory and charter notice requirements; (2) whether the court erred in refusing to give plaintiffs-appellants' instructions Nos. 46 and 47, relative to the duty of drivers to exercise a right of way with due care; (3) whether the court erred in refusing to give plaintiffs-appellants' instructions Nos. 16, 17, 18, 19, 21, and 22, in regard to the standard of care required of drivers and in giving plaintiffs-appellants' instruction No. 20, as modified; (4) whether the court erred in refusing to give plaintiffs-appellants' instructions Nos. 24, 25, 26, 48, and 50, relative to the standard of care required of a minor who is mentally retarded and suffering from amnesia and in giving plaintiffs-appellants' instruction No. 15, as modified, as well as defendant-appellee's instructions Nos. 2 and 3, and court's instruction No. 16, as modified; and (5) whether the court erred in admitting into evidence the Uniform Table of Driver Stopping Distances over the objection of plaintiffs-appellants. We will dispose of the issues raised in this appeal based upon the subject outline set out above.

I.

In *Salavea v. City and County of Honolulu,* 55 Haw. 216, 517 P.2d 51 (1973), which was decided by this court after the briefings in this case had been completed, the majority of this court held that HRS § 46-72, and section 12-111 of the charter of the City and County of Honolulu were superseded by HRS § 662-4, and that the two-year statute of limitations applicable to a claim against the state based on tort liability is likewise

applicable to a tort claim against a municipal corporation. The City does not controvert and in fact during the oral argument has conceded that the principle announced in *Salavea* applies to this appeal. Accordingly, we reverse the summary judgment entered by the court below dismissing the City from the claim set forth in count II of the first amended complaint.

## II.

The court below instructed the jury, based upon the traffic code of the City and County of Honolulu, to the effect that pedestrians crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the highway, and that no pedestrian shall cross any roadway in any residence district within 200 feet of any intersection except within a marked or unmarked crosswalk at such intersection.[4] It further defined and charged the jury from such traffic code as follows: "Section 15-2.17. Right of way defined. (1) Right of way: The privilege of the immediate priority of use of the roadway."[5] The trial court further charged the jury that "Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the circumstances shown by the evidence. It is the failure to use ordinary care. Ordinary care is that care which persons of ordinary prudence would, under the circumstances shown by the evidence, exercise in the management of their own affairs in order to avoid injury to them-

---

[4] Defendant-appellee's instruction No. 3, given over plaintiffs-appellants' objection, read as follows:

"Traffic code of the City and County of Honolulu, in effect on January 28, 1971, stated as follows:

'Sec. 15-17.4(1). Pedestrians crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right-of-way to all vehicles upon the roadway . . .'

'Sec. 15-17.5(2). No pedestrian shall cross any roadway . . . in any residence district within 200 feet of any intersection except within a marked or unmarked crosswalk at such intersection.' "

[5] Plaintiffs-appellants' instruction No. 45, given by the court by agreement.

selves or their property, or to the persons or property of others. Ordinary care is not an absolute term, but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be considered in the light of all the surrounding circumstances, as shown by the evidence."[6]

The plaintiffs-appellants contend that the court erred when it refused to give plaintiffs-appellants' requested instructions Nos. 46[7] and 47,[8] each of which would have told the jury that a right of way as defined under the provisions of the traffic code and vested in a person driving a vehicle is not absolute but that such person exercising the right of way must do so using ordinary care so as to avoid injury to others. It is the established rule in this jurisdiction that a driver must exercise a right of way in such a manner as to observe due care to avoid colliding with other persons or vehicles on the highway. *State v. Arena,* 46 Haw. 315, 379 P.2d 594 (1963); *Mossman v. Sherman,* 34 Haw. 477 (1938); *Ferrage v. Honolulu R.T.&L. Co.,* 24 Haw. 87 (1917); *Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969). Of course, the concept of due care in this respect means no more than ordinary care as was defined by the trial court. Defendant-appellee states in her brief that "In this case, the evidence was clear that plaintiff was over 100 feet away from the crosswalk at the time he was struck," and that the "defendant's duty in this situation was simply to act as a reasonable and prudent person under the circumstances and to exercise ordinary care in driving her automobile." This is precisely the point that the plaintiffs-appellants raise in this phase of the appeal: that the jury

---

[6] Court's instructions Nos. 13, 14 and 15, each of which was given by agreement.

[7] Plaintiffs-appellants' instruction No. 46 read as follows:
"You are hereby instructed that a right of way is not absolute but must be exercised with due regard to the safety of others, to whom the operator of the vehicle owes a duty."

[8] Plaintiffs-appellants' instruction No. 47 read as follows:
"You are hereby instructed that a right of way is not absolute but at all times relative and subject to the fundamental doctrine that a party shall exercise the right so as to avoid injury to others."

should have been advised, as a matter of law, by the court that a right of way is not absolute but one exercising it must use ordinary care so as to avoid colliding with another person or property within such right of way. None of the instructions given by the court on negligence conceptually covers adequately this statement of the law.

We have already said in *Tittle v. Hurlbutt,* 53 Haw. 526, 531, 497 P.2d 1354, 1357 (1972) that "repetitious instructions should be avoided by striving to reduce the number of instructions given and to give a fair and complete single instruction on each issue." We have ruled against the giving of cumulative instruction, and have held the refusal to give such cumulative or repetitive instruction, setting forth the same principle of law in diverse language as that given in another instruction, is not reversible error, even though it correctly states the law. *Tittle v. Hurlbutt, supra; see Barretto v. Akau,* 51 Haw. 383, 463 P.2d 917 (1969). On the other hand, it is prejudicial error for the court to refuse to give an instruction relevant under the evidence which correctly states the law unless the point is adequately and fully covered by other instructions given by the court. *Radford v. Morris,* 52 Haw. 180, 472 P.2d 500 (1969); *Gibo v. City and County of Honolulu,* 51 Haw. 299, 459 P.2d 198 (1969); *Gilliam v. Gerhardt,* 34 Haw. 466 (1937); *Borowsky v. Hon. R.T. Co.,* 29 Haw. 188 (1926). We hold that the refusal to give one of these offered plaintiffs-appellants' instructions, but not both, constituted prejudicial error.

III.

We now turn to the consideration of the subject matter denominated by plaintiffs-appellants and defendant-appellee as the standard of care which is required from drivers of motor vehicles, as set forth in plaintiffs-appellants' instructions Nos. 16, 17, 18, 19, 21, and 22, all of which were refused by the court, and as set forth in plaintiffs-appellants' instruction No. 20, which was given as modified over the objection of plaintiffs-appellants.

These instructions sought by plaintiffs-appellants and rejected by the court, read as follows:

Plaintiffs-appellants' instruction No. 16:

"The maximum rate of speed provided by statute is not always permissible under any and all circumstances, but the speed must be reasonable and proper under the existing conditions at the place of operation."

Plaintiffs-appellants' instruction No. 17:

"The speed that is reasonable or proper depends on what a person of reasonable and ordinary prudence would do under the existing conditions."

Plaintiffs-appellants' instruction No. 18:

"The Traffic Code of the City and County of Honolulu in effect at the time of the collision in this case provides, in part, as follows:

'Sec. 15-24.17. Attention to Driving.

Every operator of a motor vehicle shall exercise due care in the operation of such vehicle upon any street or highway in order to avoid collision with any person, vehicle or other property on or off such street or highway.' "

Plaintiffs-appellants' instruction No. 19:

"The Traffic Code of the City and County of Honolulu in effect at the time of the collision in this case provides, in part, as follows:

'Sec. 15-17.8. Drivers to Exercise Due Care:

Notwithstanding the foregoing provisions, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.' "

Plaintiffs-appellants' instruction No. 21:

"The Traffic Code of the City and County of Honolulu in effect at the time of the collision in this case provides, in part, as follows:

'Sec. 15-19.27. Horns and Warning Devices.

(1) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under

normal conditions from a distance of not less than 200 feet, but no unreasonably loud or harsh sound or a whistle. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn, but shall not otherwise use such horn when upon a highway.' "

Plaintiffs-appellants' instruction No. 22:

"The Traffic Code of the City and County of Honolulu in effect at the time of the collision in this case provides, in part, as follows:

'Sec. 15-19.16. Multiple-beam Road-lighting Equipment.

(4) All road-lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least 100 feet ahead.' "

Plaintiffs-appellants also offered instruction No. 20, reading as follows:

"The Traffic Code of the City and County of Honolulu in effect at the time of the collision in this case provides, in part, as follows:

'Sec. 15-17.1. Speed Restrictions.

(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and without regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.' "

This instruction was modified by the court, over the objection of plaintiffs-appellants, and, as modified, given as follows:

"Sec. 15-17.1. Speed restrictions.

No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing."

We notice and appreciate that plaintiffs-appellants' instructions Nos. 16 and 17, which the court refused to give, are

specifically concerned with reasonable and proper speed of a vehicle. Likewise, plaintiffs-appellants' instruction No. 20, which was given in modified form, is also specifically concerned with the same subject matter of speed.

Plaintiffs-appellants contend that their instructions Nos. 16 and 17 would have been relevant and applicable if the trial court had not excluded the opinion testimony of police officer Lupenui from whom plaintiffs-appellants sought to obtain the safe speed of a motorist at the time and place of the accident. They claim that if the court had not sustained the objection interposed by defendant-appellee and if the same had been overruled and officer Lupenui had been allowed to testify he would have stated that the safe driving speed on Keolu Drive at the time and place of this accident was 20 miles per hour. Plaintiffs-appellants additionally assert that the trial court's refusal to allow the police officer to testify as to safe speed was prejudicial error. Plaintiffs-appellants' contention is that officer Lupenui, a ten-year veteran of the Honolulu police department, was an expert witness on this subject because he spent fifteen months prior to the accident in the traffic accident investigation section of the Honolulu police department; that officers in the Honolulu police department's traffic accident section are required to undergo and receive training in connection with safe speeds under various traffic and weather conditions. Officer Lupenui also testified that during his fifteen months in that section he investigated about eight traffic accidents per day. Defendant-appellee contends, however, that an insufficient foundation was laid at trial to qualify officer Lupenui as an expert.

We hold that defendant-appellee correctly asserted that the officer's testimony on safe speed was properly excluded whether he was an expert or lay witness. Such testimony is inadmissible because it is tantamount to answering one of the ultimate questions which is for the jury to decide, i.e., whether or not defendant-appellee's conduct was reasonable under the circumstances. While this rule is not inflexible, it is generally upheld as to matters which a jury is deemed competent to determine. The question of negligence or the standard of reasonable care is one within the jury's competence and

opinion testimony on this subject is generally excluded. *Thomas v. Pacheco,* 163 Colo. 170, 429 P.2d 270 (1967); *Gaulin v. Templin,* 162 Colo. 55, 424 P.2d 377 (1967); *Westbrooks v. Gordon H. Ball, Inc.,* 248 C.A.2d 209, 56 Cal. Rptr. 422, 427-428 (1967); *Dobbertin v. Johnson,* 95 Ariz. 356, 390 P.2d 849 (1964). The determination of the safe speed under carefully detailed road, weather and lighting conditions is one of common rather than expert knowledge, and thus, not a proper subject of expert testimony. *Brodie v. Philadelphia Transportation Co.,* 415 Pa. 296, 203 A.2d 657 (1964); *Dobbertin v. Johnson, supra; Corley v. Russell,* 92 Ga. App. 417, 88 S.E. 2d 470 (1955); *Days Transfer, Inc., v. Silvers,* 122 Ind. App. 318, 104 N.E.2d 392 (1952); *Cone v. Davis,* 66 Ga. App. 229, 17 S.E.2d 849 (1941); *Lee-Moor Contracting Co. v. Blanton,* 49 Ariz. 130, 65 P.2d 35 (1937).

Furthermore, the United States Court of Appeals for the Ninth Circuit stated in *Unitec Corporation v. Beatty Safway Scaffold Company of Oregon,* 358 F.2d 470, 477-478 (9th Cir. 1966): "Admission of opinion evidence is a matter largely within the discretion of the trial court, and only an abuse of that discretion can result in possible reversal. *Salem v. United States Lines Company,* 370 U.S. 31 . . . (1962)."

The trial court in the case at bar committed no abuse of discretion by excluding officer Lupenui's opinion testimony as to the safe speed under the conditions then prevailing during the collision.

We would therefore hold that the refusal to give plaintiffs-appellants' instructions Nos. 16 and 17 was not error, since the trial court gave plaintiffs-appellants' instruction No. 20, as modified, which properly instructed the jury that "No person shall drive a vehicle on a highway at a speed greater than is reasonable under the conditions then existing."

We hold similarly that the court below properly refused to give plaintiffs-appellants' instructions Nos. 18 and 19. Plaintiffs-appellants' instructions Nos. 18 and 19, become redundant and repetitious in view of the court's instructions covering the principle of negligence and ordinary care. *Tittle v. Hurlbutt, supra; Barretto v. Akau, supra.* Also, in the

absence of any further instruction from the court that due care and ordinary care represent the same standard of care and are synonymous terms,[9] these instructions may lead the jury to believe that a new concept of the standard of care has been expressed, thereby misleading and confusing the jury.[10]

In our view, we fail to discern how plaintiffs-appellants' instruction No. 21 would be relevant or in any way aid the jury in the determination of any facts involved in this case. The record reveals no evidence that defendant-appellee's vehicle was not equipped with a horn in good working order. As to whether or not defendant-appellee, as a reasonable and prudent driver, should have given a warning to plaintiff-appellant by the use of her horn would depend upon the circumstances as shown by the evidence, as to which the trial court had adequately instructed the jury under its instructions Nos. 13, 14 and 15. Based upon such a state of the record, we think the trial court properly declined to give plaintiffs-appellants' instruction No. 21.

The trial court also refused to give plaintiffs-appellants' instruction No. 22, which quoted section 15-19.16 of the traffic code of the City and County of Honolulu captioned "Multiple-Beam Road Lighting Equipment." Defendant-appellee agrees that this section of the code provides the required specification for automobile headlights. An alleged violation of an ordinance of this type generally presents a question of negligence to be decided by the jury.[11] Plaintiffs-appellants assert that such an instruction was appropriate in light of the testimony of Mr. Wayne Asing, the husband of defendant-appellee. Mr. Asing testified that he observed

_____

[9] Notwithstanding that a jury may give to the term due care a meaning different from ordinary care, unless the jury is explicitly instructed that these expressions state the same standard of care, it is to be understood that due care and ordinary care are interchangeable terms and denote the same standard of care, and these terms are hereinafter used in such manner.

[10] Brothers v. Surplus Tractor Parts Corporation, 161 Mont. 412, 506 P.2d 1362 (1973); Smith Development Corp. v. Bilow Enterprises, Inc., — R.l.— , 308 A.2d 477 (1973); West Virginia Department of Highways v. Bartlett, —W.V.—, 194 S.E.2d 383 (1973); Willert v. Nielsen, 146 N.W.2d 26 (N.D. 1966).

[11] See, 67 A.L.R.2d 118 to 175.

that the headlight beams on his wife's red 1966 Volkswagen projected downward and to the right when on low beam, illuminating the front of the vehicle for a distance of 10-20 feet. The defendant-appellee, Kathleen Asing, had testified that she had switched her headlights on to low beam just prior to the accident, because she had encountered oncoming vehicles travelling in the opposite direction. On direct examination, Mr. Asing testified in apparent response to questions about his observations of the red Volkswagen made within three or four days prior to the accident.[12] On cross-examination, however, he stated that he may have made his observations concerning the headlights almost immediately after the accident but that he was not sure.[13] He further

---

[12] Mr. Asing's testimony on direct examination:

Q With respect to just before this accident occurred, did you have occasion to drive her car within three or four days preceding that?

A Yes.

Q Did you have any, did you notice anything unusual about the operation of her brakes?

A No, I didn't.

Q How about with respect to the headlights?

A The headlights, the only thing I noticed was it was down and towards the right.

Q When did that, would that be a high beam or low beam?

A That would be low beam.

Q That would be the, you mean the normal thing when you put on low beam?

A Yes.

[13] On cross-examination Mr. Asing testified:

Q You indicated, did you not, in your direct examination that when the lights were put on low beam — I'm speaking of the automobile that was involved in the accident — that they went down into the right?

A They go down.

Q Yes.

A To the right.

Q And to the right. And how soon or how far before the accident had you noticed this situation, if you recall?

A I think I can remember this almost immediately after the accident.

Q In other words, you are not testifying that it was in existence before the accident?

A It could have been.

Q But you don't know?

A No.

Q You don't know if the damage to the automobile caused that situation, do you?

A No.

testified that the headlights on the red Volkswagen had been found to be satisfactory when tested during the most recent required inspection. Under these circumstances, the jury, as the trier of fact, should have been permitted to decide whether Mr. Asing's recollection was more accurate on direct examination or cross-examination. The condition of the headlights of the red Volkswagen just prior to the accident was an appropriate question of fact for the jury to decide in connection with the issue of negligence on the part of defendant-appellee. *See* 67 A.L.R.2d 118 to 175. We, therefore, conclude that failure to give plaintiffs-appellants' instruction No. 22 was prejudicial error.

## IV.

Question IV of the questions presented and the arguments thereon in the briefs of plaintiffs-appellants urge and insist that the trial court erred in refusing to give plaintiffs-appellants' instructions Nos. 24, 25, 26, 48 and 50, all of which instructions they argue related to the standard of care to be imposed upon a mentally retarded minor suffering from amnesia, and in giving plaintiffs-appellants' instruction No. 15, as modified, as well as in giving defendant-appellee's instructions Nos. 2 and 3 and court's instruction No. 16.

Plaintiffs-appellants' instruction No. 25 read as follows:

"If you are satisfied with the medical and other evidence presented that Plaintiff, Douglas Sherry, is suffering from a loss of memory that makes it impossible for him to recall events at or about the time of the accident and that the injuries Plaintiff incurred in the accident were substantial fact in causing his loss of memory, Plaintiff Douglas Sherry is presumed to have been obeying the law and using due care at the time and place of the accident and is not held to as high a degree of proof as would be a Plaintiff who can himself describe the occurrence."

The court below refused to give this instruction over the objection of plaintiffs-appellants. They claim that this was prejudicial error. Defendant-appellee contends that this alleged error is a "red herring" because the jury found that the defendant-appellee was not negligent and never reached the

question of the plaintiff-appellant's due care or lack thereof.[14] However, common sense clearly indicates that to reach the conclusion that the defendant was not negligent, the jury must have concluded that the plaintiff-appellant was not in the crosswalk when he crossed Keolu Drive. Therefore, the question of the legal effect of plaintiff-appellant's amnesia, which rendered him unable to recall anything about the accident, ought to be discussed.

In the absence of eyewitness testimony or physical evidence, or both, to the contrary, a person who suffers from retrograde amnesia as a result of an accident and is, therefore, unable to testify to the events of the accident is entitled to an instruction stating that he is presumed to have been exercising due care at the time of the accident and is not held to a high degree of proof as would be a plaintiff who could describe the occurrence himself. *Schultz & Lindsay Construction Co. v. Erickson*, 352 F.2d 425 (8th Cir. 1965); *Schechter v. Klanfer*, 28 N.Y.2d 228, 269 N.E.2d 812 (1971); *Scott v. Burke*, 39 Cal.2d 388, 247 P.2d 313 (1952); *Gadbury v. Ray*, 171 Cal. App.2d 150, 340 P.2d 66 (1959); *Breker v. Rosema*, 301 Mich. 685, 4 N.W.2d 57 (1942).

While a plaintiff who has suffered amnesia due to the injuries he has sustained is held to a lesser degree of proof than one who could have testified to the events, the burden of proof is not shifted and plaintiff must still produce sufficient evidence to constitute a prima facie case. *Schechter v. Klanfer, supra.* The presumption of due care in favor of an amnesia victim is rebuttable by other evidence, including circumstantial evidence. *See Scott v. Burke, supra.* In many jurisdictions this presumption " 'disappears' if there is an eyewitness who can fully testify to the facts which would

---

[14] Where the jury finds no negligence on the part of a defendant, defects in requested instructions on contributory negligence become immaterial and provide no grounds for a finding of error. In *Termaat v. Bohn Aluminum & Brass Company*, 362 Mich. 598, 107 N.W.2d 783 at 786 (1961), the Michigan Supreme Court stated: "It is apparent from the verdict of the jury that contributory negligence had nothing to do with the verdict. If we were to admit that the charge with reference to contributory negligence should not have been given, we still could not reverse since the record discloses the jury decided the case by finding no negligence on the part of defendant and consequently did not reach the question of contributory negligence." To the same effect, *Schwab v. Keeler*, 81 Ohio App. 291, 79 N.E.2d 176 (1947).

otherwise be presumed. 'Where there is an eyewitness to an accident, issue of due care rests upon proof, not upon presumption, and this is so even if eyewitness is the adverse party.' [citations omitted] However, the mere fact that an eyewitness was present is not enough to annul the presumption. The eyewitness must have had sufficient time to observe whether the injured or deceased person was exercising due care in the crucial seconds before, and during, the accident." [citations omitted] *Schultz & Lindsay Construction Company v. Erickson, supra* at 435.

In *Hartford Fire Insurance Company v. Horne*, 65 N.M. 440, 338 P.2d 1067 (1959), the plaintiff requested and the trial court gave an instruction stating the presumption of ordinary care in favor of a decedent (to which the presumption in favor of amnesia victims is analogous), notwithstanding the physical evidence and eyewitness testimony which indicated the deceased's lack of due care. The Supreme Court of New Mexico reversed the trial court, the opinion of the appellate court holding that an instruction on the presumption of due care should not have been given when the record included the testimony of an eyewitness which was corroborated by the physical facts at the scene of the collision.

In the present case the physical evidence indicated that the point of impact occurred on Keolu Drive at approximately 105 feet north of the intersection of Keolu Drive and Iana Street, and that the position of plaintiff-appellant was ascertained to be further north on Keolu Drive within its makai (outside) lane 129 feet from the same intersection. An eyewitness, the defendant-appellee, testified that the plaintiff-appellant was not within the pedestrian crosswalk when she observed him and when the vehicle struck him. In light of these circumstances, the trial court did not err in refusing to instruct the jury that the plaintiff-appellant was presumed to have exercised due care. Since the court did not err in rejecting plaintiffs-appellants' instruction No. 25, it properly refused plaintiffs-appellants' instruction No. 26,[15] which would

_____

[15] Plaintiffs-appellants' instruction No. 26 read as follows:
    "Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in

154

have told the jury the evidentiary significance of the presumption sought by plaintiffs-appellants.

Plaintiffs-appellants next contend that the trial court erred in refusing to instruct the jury that plaintiff-appellant, as a minor, is held to a standard of care appropriate to his age, experience and mental capacity. We agree with this proposition advanced by plaintiffs-appellants. Because of varying degrees of intelligence and capacities possessed by children in the same age group, it has been necessary to except children from the objective standards of care, and the trial court should not have modified plaintiffs-appellants' instruction No. 15[16] by deleting therefrom the phrase "and mental capacity." The rule in this and a clear majority of jurisdictions is that a minor is required to exercise care appropriate to his age, experience and *mental capacity. Viveiros v. State of Hawaii,* 54 Haw. 611, 513 P.2d 487 (1973); *Grace v. Kumalaa,* 47 Haw. 281, 386 P.2d 872 (1963); *Fraga v. Hoffschlaeger Co.,* 26 Haw. 557 (1922). *Fraga v. Hoffschlaeger Co., supra,* at 568, explicitly stated that mental capacity was a basic component of the test: "The degree required of a bright, intelligent child is perhaps different from that required of one less favorably endowed in these respects."

In view of our above holding that mental capacity of juveniles should be given consideration, together with their age and experience, to ascertain the capacity of a particular child to appreciate the risk of danger and form a reasonable judgment, we consider the substance of defendant-appellee's

---

the case.

A presumption is a rule of law which permits the jury to find the existence of one fact from proof of another fact.

A presumption may be overcome by evidence. Your duty is to determine the facts on the basis of all the evidence.

Unless and until outweighed by evidence in the case to the contrary, you may find and conclude that Plaintiff Douglas Sherry was using due care at the time of the accident."

[16] Plaintiffs-appellants' instruction No. 15 read as follows:

"A minor is not held to the same standard of care as an adult. A child is only required to use care appropriate to his age and experience (and mental capacity)." [Portion in parenthesis offered but omitted by the court.]

instruction No. 2[17] would be incompatible with plaintiffs-appellants' instruction No. 15, as hereinabove discussed. Under these circumstances, we deem the court below erred[18] when it gave defendant-appellee's instruction No. 2, since this instruction, under the evidence of this case, was inappropriate, and only tended to mislead and confuse the jury. *Borowsky v. Hon. R.T. Co., supra; Hall v. Corporation of Catholic Archbishop of Seattle,* 80 Wash. 2d 797, 498 P.2d 844 (1972); *Metropolitan Life Ins. Co. v. Alterovitz,* 214 Ind. 186, 14 N.E.2d 570 (1938).

The trial court properly refused to give plaintiffs-appellants' instructions Nos. 48[19] and 50,[20] each of which would have told the jury in effect that a mentally retarded person is not bound to follow the same standard of care applicable to persons of normal mental capacity. The appropriate instruction on the standard of care required of plaintiff-appellant was stated in plaintiffs-appellants' instruction No. 15, footnote number 16, *supra,* which as we held

---

[17] Defendant-appellee's instruction No. 2 read as follows:

"Under the rule of ordinary care which I have just stated, no exception is made for a person who is mentally retarded. A person who is mentally retarded is bound to follow the same standard of care as any other person acting under the same circumstances."

[18] This error and the error indicated in the preceding paragraph with respect to plaintiffs-appellants' instruction No. 15, as modified, are not prejudicial or reversible errors because the record amply demonstrates that the jury did not reach the question of contributory negligence. The trial court, of course, will rectify these errors on the retrial of this case.

[19] Plaintiffs-appellants' instruction No. 48 read as follows:

"Under the rules of ordinary care which I have just stated, an exception is made for a person who is mentally retarded. A person who is mentally retarded is not bound to follow the same standard of care as any other person acting under the same circumstances. Thus, you should hold Plaintiff Douglas Sherry to a standard of care commensurate with his mental capacity and experience."

[20] Plaintiffs-appellants' instruction No. 50 read as follows:

"Under the law controlling this case a person who is mentally retarded is not bound by the same standard of care as a person who possesses normal mental faculties. Thus, in considering the question of negligence, you are to hold Plaintiff Douglas Sherry to a lesser standard of care than Defendant Kathleen Asing if you find that he had a reduced mental capacity at the time and place of the accident."

hereinabove, should have been given without the deletion of the phrase mental capacity. If given in addition to plaintiffs-appellants' instruction No. 15, their instructions Nos. 48 and 50 would be repetitious and cumulative. They were, thus, properly refused. *Tittle v. Hurlbutt, supra, Barretto v. Akau, supra.* These two proposed instructions are not limited to the well settled area of the law dealing with the standard of care required of minors of less than normal mental capacity, but range unnecessarily into the disputed area of the standard of care required of mentally incapacitated adults. These instructions would thus be potentially confusing to a jury. Since the plaintiff-appellant was a minor, these instructions are unnecessary and inappropriate to the facts of the case. We need not, furthermore, determine herein the appropriate standard of care to be required of adults of less than normal mental capacity.

We thoroughly concur with the court below when it refused to give plaintiffs-appellants' instruction No. 24,[21] which would have told the jury that the plaintiff-appellant "was not contributorily negligent, and therefore you [jury] must find in favor of plaintiff, Douglas Sherry, if you find any degree of negligence on the part of the defendant, Kathleen Asing, who proximately caused the accident." Such an instruction would be tantamount to a directed verdict on the question of contributory negligence in favor of plaintiffs-appellants. It is palpably clear to us that based upon the instant record the determination of the issue of contributory negligence was not within the province of the court but the resolution of that issue was one within the prerogative of the jury. We further hold that there was no error in giving defendant-appellee's instruction No. 3[22] and in giving court's

---

[21] Plaintiffs-appellants' instruction No. 24 read as follows:

"You are instructed that under the facts and circumstances of this case, Plaintiff, Douglas Sherry, was not contributorily negligent, and therefore you must find in favor of Plaintiff, Douglas Sherry, if you find any degree of negligence on the part of the Defendant, Kathleen Asing, who proximately caused the accident."

[22] This instruction has been quoted in full in footnote 4.

instruction No. 16, [23] as these instructions were relevant to the facts, correct statements of the law and were not covered by other portions of the trial court's instructions to the jury. *See, Radford v. Morris, supra; Gibo v. City and County of Honolulu, supra; Gilliam v. Gerhardt, supra;* and *Borowsky v. Hon. R.T. Co., supra.*

V.

The plaintiffs-appellants finally allege that the trial court erred in admitting into evidence over their objection, the Uniform Table of Driver Stopping Distances, same being defendant-appellee's exhibit D. This chart purports to show perception, reaction and stopping distances of drivers of vehicles travelling at speeds of twenty miles per hour to sixty miles per hour. The record below fails to disclose the purpose for which the chart was introduced.

Courts in many jurisdictions refuse to admit stopping distance charts on the ground that they are hearsay. Such charts are considered hearsay because they are a form of printed testimony by experts who are not available for cross-examination.[24] These charts are also rejected as evidence because road, weather, vehicle, and driver conditions often vary from the so-called "average" conditions which prevail during the road tests which form the basis of the charts. A slight change in any one of these variables can make a significant difference in the resulting stopping distance

---

[23] Court's instruction No. 16, as modified, read as follows:

"In this case, in addition to denying that any negligence on his part proximately caused injury to the Plaintiff, Douglas Sherry, the Defendant claims that the Plaintiff himself was negligent and that said Plaintiff's own negligence was a proximate cause of the accident and injury. Where a Plaintiff's own negligence is a proximate cause of his injury this is called contributory negligence.

The burden is on the Defendant to prove by a preponderance of the evidence any contributory negligence on the part of the Plaintiffs."

[24] Thedorf v. Lipsey, 237 F.2d 190 (7th Cir. 1956); Rooney v. Lloyd Metal Products Co., 458 S.W.2d 561 (Mo. 1970); Picard v. Joffrion, 202 So. 2d 372 (La. App. 1967); Guidry v. Grain Dealers Mutual Ins. Co., 193 So. 2d 873 (La. App. 1967); Tuite v. Union Pacific Stages, Inc., 204 Or. 565, 284 P.2d 333 (1955); Breshears v. Myers, 266 S.W.2d 638 (Mo. 1954).

figures. *Hughes v. Vestal*, 264 N.C. 500, 142 S.E.2d 361 (1965).

Courts which have held stopping distance charts inadmissible have on several occasions held that the error was not prejudicial where the table of stopping distance charts was introduced to rebut the testimony of an expert witness. *McDonald v. Mulvihill*, 84 N.J. Super 382, 202 A.2d 213 (1964); *Breshears v. Myers, supra; cf., Hultberg v. Phillippi*, 169 Kan. 610, 220 P.2d 208 (1950), where a stopping distance chart was admitted in light of the defendant's own testimony as to how far her vehicle travelled after colliding with a pedestrian.

. In the case under consideration there is nothing in the record to indicate that the Uniform Table of Driver Stopping Distances was introduced for limited purposes; there is an absence of supporting expert testimony; and there is an absence of special circumstances such as the need to rebut the testimony of an adverse or expert witness. We are mindful, however, that the jury could have only used the Uniform Table of Driver Stopping Distances to determine whether or not the defendant-appellee could have stopped her vehicle after first seeing and before striking the plaintiff-appellant. The only testimony of record indicates that the plaintiff-appellant was approximately ten feet in front of defendant-appellee's automobile when she first observed him. It was drizzling and the road was wet. Common sense as well as common knowledge, unaided by charts and tables, tells us that it is not possible to stop any vehicle travelling twenty to twenty-five miles per hour within ten feet on a wet road.

Under these circumstances, we do not think that the trial court erred in admitting into evidence the Uniform Table of Driver Stopping Distances, especially in view of *State v. Arena, supra*, where this court permitted judicial notice of the contents of stopping distance charts for the purpose of determining the general limits within which a vehicle may be stopped under normal road conditions. It is evident, therefore, that even if the Uniform Table of Driver Stopping Distances did influence the jury's verdict, that plaintiffs-

appellants were not prejudiced by its admission into evidence. HRCP Rule 61. By this holding, we are not saying that the admission into evidence of a stopping distance chart will not be held prejudicial error in every case. There may be an appropriate case in which such a chart is received into evidence without any expert testimony, much like in the case at bar, concerning a crucial factual issue as to whether or not a vehicle travelling at a given speed can be stopped within a certain precise distance. In such a case, we would not hesitate to hold that the admission of such chart into evidence would constitute prejudicial error.

Accordingly, we also reverse the judgment entered in this cause for the defendant-appellee and remand the same as to both the City and defendant-appellee for further proceedings not inconsistent with this opinion.

*Christopher P. McKenzie (Gould & McKenzie* of counsel) for plaintiffs-appellants.

*David J. Dezzani (Gary Y. Shigemura* with him on the brief, *Jenks, Kidwell, Goodsill & Anderson* of counsel) for defendant and third-party plaintiff-appellee.

*Robert M. Rothwell,* Deputy Corporation Counsel *(Richard Sharpless,* Corporation Counsel, of counsel), for third-party defendant-appellee.