516

RICHARD T. MURAKAMI, LOIS MURAKAMI and SHARON ABREW, Special Administratrix of the ESTATE OF GRANT T. MURAKAMI, Deceased, Plaintiffs-Appellees, *v.* COUNTY OF MAUI, Defendant-Appellant, and JOHN DOES 1-5, JOHN DOE CORPORATIONS 1-5, JOHN DOE PARTNERSHIPS 1-5, ROE NON-PROFIT CORPORATIONS 1-5, and ROE GOVERNMEN-TAL AGENCIES 1-5, Defendants

NO. 10706

(CIVIL 5437(1))

OCTOBER 29, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant County of Maui (County) appeals the May 10, 1985 Judgment and the June 3, 1985 Amended Judgment entered in favor of plaintiffs. We vacate the judgments and remand for a new trial.

At approximately 8:50 p.m., on July 25, 1979, the right side of a 1974 Dodge van driven by Grant Murakami (Grant) collided into the rock wall and the bridge railing of the Makawao Bridge (also known as the Kailua or Oliveira Bridge). Grant, age 23, was driving from Makawao toward Pukalani. His fiancee, Wendy Hondo (Wendy), was the sole passenger. Grant attempted to reverse the van from the wall and railing, but the van would not move. Wendy watched Grant exit the van via the driver's side door and proceed toward the rear. Thereafter, Wendy exited the van via the driver's side door to look for Grant. She could not find him. She called for him. There was no response. A passerby suggested that Grant might be in the gulch under the bridge. They found Grant unconscious there. His most serious injury was a brain clot. He died 13 days later.

The jury answered the special verdict form in relevant part as follows:

*Question No. 5.*

A. Without taking into consideration reduction of any plaintiff's damages due to any negligence attributable to Grant Murakami, deceased, state the full amount of damages to be awarded to the Estate of Grant Murakami:

| | |
|---|---|
| for the reasonable value of his medical, funeral and burial expenses; | $ 34,528.76 |
| for the past earnings and present value of the future earnings as would have been earned by Grant Murakami, deceased; | $450,000 |
| for any conscious pain and suffering had by Grant Murakami, deceased, prior to his death: | $ 30,000 |

B. State the full amount of damages to be awarded plaintiffs Richard Murakami and Lois Murakami, for their mental distress incurred during Grant Murakami's hospitalization and for their loss of filial respect, love, care, affection and attention of their deceased son:

| | |
|---|---|
| Richard Murakami | $175,000 |
| Lois Murakami | $300,000 |

\* \* \*

*Question No. 6.* With respect to any negligence, legally a cause of the death of Grant Murakami, state the relative degree of such fault, attributable to either or both the County of Maui and/or Grant Murakami, described in percentage (%), so that such percentage allocation of such fault, singly, or in combination, totals 100%:

Answer:  Defendant County of Maui:    75%
              Grant Murakami, deceased:      25%

Judgment was entered awarding Grant's estate 75% of its damages and awarding Richard and Lois Murakami 100% of their damages.[1]

I.

The jury trial began on April 29, 1985. On April 25, 1985, over the County's objection, the lower court granted plaintiffs' December 31, 1984 motion *in limine* and ordered that: "No mention of the speed of the vehicle operated by Grant Murakami, prior to colliding with the Kailua Bridge, or any portion thereof, argument thereon or jury instruction pertaining thereto, shall be permitted."

At and in the vicinity of the bridge, the speed limit was 30 miles per hour. An advisory speed limit of 20 miles per hour was posted. In a deposition, the County's expert in accident reconstruction testified that at the initial impact, the van's speed was in excess of 35 miles per hour. In their answering brief, plaintiffs contend that "[b]ecause no causal relation between the speed of the Murakami van and Grant's later fall from the bridge can be shown, such evidence was properly excluded."

The bridge railing was 2 feet high, 8 inches wide at its top, and 87 feet long. A cemented irregular rock wall, generally 18 inches high and 18 inches wide, extended from each end of the bridge railing parallel to the road.[2] The sides of the rock wall and the top of the bridge railing closest to the road ran along the same course. Thus, on the side farthest from

---

[1]Plaintiffs' Instruction 17, Court's Instruction 34 states as follows:

If you find that Grant Murakami was negligent, and that such negligence was a legal cause of his death, such negligence, if any, shall not be imputed to his surviving parents nor diminish any recovery to which you find they are entitled.

[2]Originally, the bridge railing and rock wall were higher but became lower with each repavement of the road.

the road, the rock wall extended 10 inches further out than the top of the bridge railing.

The van came to rest with approximately two-thirds of the van past the junction of the rock wall and the bridge railing. Plaintiffs' theory of how and where Grant fell was that in an effort to find out why he could not reverse the van from the rock wall and bridge railing, Grant stepped onto the rock wall, walked on it toward the bridge railing, and, in the darkness, fell at the junction of the rock wall and the bridge railing because he could not see the 6-inch increase in height and the 10-inch decrease in width at that point.

The Makawao Bridge was illuminated by two overhanging street lights attached to poles on the side of the road. One pole was located across the street in front of where the van came to rest and the other was across the street behind the van's resting place. Each pole was approximately 100 feet from the junction of the rock wall and the bridge railing. Each light was a "400-A luminary with 250-watt lamp." Two of plaintiffs' witnesses (Officer Paul Winters and accident reconstruction expert Harry J. Krueper) testified that the van blocked the street lights from illuminating the junction of the rock wall and bridge railing where Grant allegedly fell.

Since it was the placement of the van that blocked the street lights and foreseeably initiated the unfortunate sequence of events that resulted in Grant's death, Grant's negligence, if any, in driving the van to its place of rest may have been a substantial factor cause of the harm. *See McKenna v. Volkswagenwerk,* 57 Haw. 460, 558 P.2d 1018 (1977); *Leary v. Poole,* 5 Haw. App. 596, 705 P.2d 62 (1985).

In their answering brief, plaintiffs appear to agree with our analysis when they state:

The above factors coalesced into causing Grant's fall and subsequent death. The lane narrowness permitted van contact with the wall. Absence of a shoulder or sidewalk compelled Grant to walk upon the rock wall to view the area of van/wall contact. No chain fence prevented him from doing so. No guardrail existed to prevent a potential fall. No warning devices whatsoever described the undetectable narrowing of the rock wall surface (18″ to 8″) at the bridge rail juncture and increased height of the rail thereat. No illumination lighted the darkened area.

Over the County's objection, the lower court gave Plaintiffs' Instruction 13A as Court's Instruction 24, which states as follows:

The collision of the Murakami van with the rock wall may not be considered by you in determining whether Grant Murakami engaged in negligent conduct, if any, which may have been a legal cause of his fall. Such matters are not relevant in your deliberations.

Although the County properly appealed the April 25, 1985 *in limine* order, it failed as required by Rule 28(b)(4), Hawaii Rules of Appellate Procedure, to raise Court's Instruction 24 as a point of error.

Since Court's Instruction 24, which precluded the jury from considering the collision of the van into the rock wall in determining Grant's contributory negligence, was not appealed, and the speed of the van covered in the April 25, 1985 *in limine* order had relevance only with respect to the collision, we need not, and do not, rule on the propriety of the *in limine* order.

## II.

At the trial, the lower court instructed the jury in relevant part as follows:

Plaintiffs' Instruction 1, Court's Instruction 13:

The burden is on a party having to prove a claim or defense to prove every essential element of the claim or defense by a preponderance of the evidence.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it has[,] more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true.

Plaintiffs' Instruction 2, Court's Instruction 14:

The burden of proving that the defendant County of Maui was negligent, and that such negligence was a legal cause of the death of Grant Murakami, is on the plaintiffs. The plaintiffs must also prove their damages.

The burden of proving that plaintiff Grant Murakami, deceased, was negligent, and that his negligence was a legal cause of his death, is on the defendant.

Plaintiffs' Instruction 14, Court's Instruction 25 (given over objection):

In the absence of eyewitness testimony or physical evidence to the contrary, a decedent, such as Grant Murakami, is rebuttably

presumed to have been exercising due care at the time of the occurrence giving rise to his later death and is not held to as high degree of proof as would be required of a plaintiff who could describe the occurrence himself were he alive.

Court's Instruction 31 (modified and given over objection):

In this case, in addition to denying that any negligence on its part legally caused injury to the plaintiff, the defendant claims that the plaintiff himself was negligent and that plaintiff's own negligence was a legal cause of the plaintiff's injuries. This is called contributory negligence.

The burden is on the defendant to prove by a preponderance of the evidence any contributory negligence on the part of the plaintiff.

We conclude that Court's Instruction 25 should not have been given and that it is prejudicial error necessitating a new trial.

Court's Instruction 25, which is based on dicta contained in *Sherry v. Asing,* 56 Haw. 135, 531 P.2d 648 (1975), is discussed in the context of amnesiacs in Annot., 88 A.L.R.3d 622 (1978). In our view, the instruction involves two distinct concepts which we will discuss separately.

A.

The first part of Court's Instruction 25 involves a rebuttable presumption of Grant's due care. We need not decide whether this presumption is of the kind described in Rule 303, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1981) (HRE), or Rule 304, HRE, because, in either case, the instruction should not have been given.

Rule 304 describes presumptions imposing the burden of proof. Being deceased, Grant was not a party. Grant's negligence was an issue raised by the County's affirmative defense, and, without the presumption, the County had the burden of proof regarding that issue. Therefore, Court's Instruction 25 was superfluous and confusing and should not have been given because "[t]he policies behind a presumption are usually fully satisfied by placing the burden of persuasion upon the adversary." *In re Estate of Lorenzo,* 61 Haw. 236, 247, 602 P.2d 521, 529-530 (1979). *See Jurman v. Samuel Braen, Inc.,* 47 N.J. 586, 222 A.2d 78 (1966).

Rule 303 describes presumptions imposing the burden of producing evidence. The above discussion regarding Rule 304 is applicable here

also. Moreover, a Rule 303 presumption disappears if and when such evidence that would support a finding of Grant's negligence was introduced. Upon the disappearance of the presumption, the giving of Court's Instruction 25 is error. Thus, the question is whether evidence was introduced that would support a finding of Grant's negligence. Upon a review of the record, our answer is yes.

### B.

The second part of Court's Instruction 25 involves a reduction of the "degree of proof" required from Grant's estate. In our view, that part of the *Sherry v. Asing* dicta and of the cases it cites as authority[3] are wrong.

This case involves three claims. All three are against the County: 1) Grant's estate's claim; 2) Grant's father's claim; and 3) Grant's mother's claim. It involves no cross-claims, no counterclaims, and only one affirmative defense: the County's affirmative defense of Grant's negligence.

It is plaintiffs' burden to prove defendant's negligence by a preponderance of the evidence. It is defendant's burden to prove plaintiff decedent's negligence (lack of due care) by a preponderance of the evidence.

Reasonably construed, Court's Instruction 25 contradicted Court's Instructions 13, 14, and 31; erroneously and prejudicially instructed the jury that with respect to claims 1, 2, and 3 plaintiffs did not have the burden of proof or their burden of proof was less than by a preponderance of the evidence; and erroneously and prejudicially instructed the jury that with respect to the County's affirmative defense the County's burden of proof was greater than by a preponderance of the evidence.

Plaintiffs' counsel encouraged such erroneous conclusions when in closing argument he told the jury in part as follows:

Because the law recognizes someone that has died, he can't come to tell you exactly what happened, where his death occurred, unwitnessed by anybody else, as the case here.

---

[3]*Schultz v. Lindsay Construction Co. v. Erickson*, 352 F.2d 425 (8th Cir. 1965); *Schechter v. Klanfer*, 28 N.Y.2d 228, 269 N.E.2d 812 (1971); *Scott v. Burke*, 39 Cal.2d 388, 247 P.2d 313 (1952); *Gadbury v. Ray*, 171 Cal.App.2d 150, 340 P.2d 66 (1959); *Breker v. Rosema*, 301 Mich. 685, 4 N.W.2d 57 (1942). 56 Haw. at 152.

So the law says to you that you must presume that at the time the boy fell, in this case he was exercising due care.

Why do I say that? Because I will show in relevant part the instruction that the judge is going to give you on this issue.

"In the absence of eyewitness testimony or phys[i]cal evidence to the contrary, a decedent, such as Grant Murakami, is rebuttably presumed to have been exercising due care at the time of the occurrence giving rise to his later death. . ." — and here's what's important, ladies and gentlemen — ". . .he is not held to as high degree of proof as would be required of a plaintiff who could describe the occurrence himself were he alive."

This is one of the major principles of law that you may utilize in analyzing Grant's conduct, because despite what you were told at the beginning of the trial that each party starts out equal — we talked about that — that you had no beliefs who might be more at fault, because you hadn't heard any evidence.

Well, that was true from your standpoint. You shouldn't ever come into this courtroom with any pre-conceived ideas that the estate was better off than the State or that Grant was better off than the State or the parents were better off than the State or the County.

But you didn't know, and now you do that the law says at this point in time Grant is one up on the County. The County doesn't have any presumption of due care like that. There will be no instruction told you along this line. Only Grant Murakami, because he died and can't come to court and tell you what happened, is given the presumption that he was exercising due care.

And I submit to you, they would then have to create evidence, the defense, to counter that presumption. They would have to shoulder the burden of proof to prove very clearly to you that this due care presumption should not exist. And don't do on speculation, ladies and gentlemen. Do it on evidence.

III.

The lower court instructed the jury in Plaintiffs' Instruction 20, Court's Instruction 35 (modified and given over objection) in relevant part as follows:

The elements of damages you may consider in making an award to the respective plaintiffs in this case are:

The Estate of Grant Murakami:

\*   \*   \*

(B) The present value of that part of his future earnings, if any, in excess of the probable cost of his own maintenance and provision he would have made for any probable family.

In relevant part the special verdict form read as follows:

*Question No. 5.*

A. Without taking into consideration reduction of any plaintiff's damages due to any negligence attributable to Grant Murakami, deceased, state the full amount of damages to be awarded to the Estate of Grant Murakami:

\*   \*   \*

for the * * * present value of the future
earnings as would have been
earned by Grant Murakami, deceased;                  $450,000

The instruction required the jury to reduce the present value of Grant's projected future earnings by his probable cost of maintaining himself and his probable family. However, question 5 of the special verdict form asked the jury to state the present value of Grant's projected future earnings without any reduction. Therefore, the jury was not asked and did not answer the relevant question.

IV.

We express no opinion on any of the County's other points on appeal.

Accordingly, the May 10, 1985 Judgment and the June 3, 1985 Amended Judgment are vacated and this case is remanded for a new trial.

*Howard M. Fukushima* (*James B. Takayesu* with him on the brief), Deputy Corporation Counsels, County of Maui, for defendant-appellant.

*James Krueger* for plaintiffs-appellees.